[SUNBURY, JUNE 25, 1829.]

*l* KESSLER *against* M'CONACHY.

| Rawle | |
|---|---|
| 1 R | 435 |
| 205 | ¹406 |
| 22 SC | ¹625 |

IN ERROR.

The property of a stranger found upon the demised premises, is liable to distress by the landlord.

In a replevin by the stranger, he cannot call the tenant as a witness to prove no rent was due.

The exemption of a stove, belonging to the tenant, from distress, under the act of the 29th of *March*, 1821, is confined to that which is used in his family, and does not extend to one in his shop, apart from his dwelling-house.

Informalities in an avowry for rent in arrear, are cured by going on to trial.

If, on the issue of no rent in arrear, the jury find for the defendant, but omit to find the value of the goods, judgment of *retorno habendo* may be entered.

A book, made up by transcribing entries, made by a journeyman on a slate, some of them being transcribed by the journeyman, and some by the party, some on the same evening, and others several days afterwards, but all within two weeks, is not admissible in evidence as a book of original entries, supported by the oath of the party.

Eviction of the tenant by the landlord, has no operation on rent already due: it suspends the rent of the month, quarter, or other portion of time running on at the time of eviction.

If, after a distress, made on the goods of a stranger, the tenant obtains a judgment of a justice of the peace in his favour, in a proceeding under the act of the 20th of *March*, 1810, to compel the landlord to defalcate the tenant's just account, the stranger, having taken out a writ of replevin, may use this judgment as *prima facie* evidence on the issue of no rent in arrear.

ERROR to the Court of Common Pleas of *Mifflin* county.

*Frederick Kessler* brought an action of replevin against *James M'Conachy* for one stove of the value of twenty-five dollars. The defendant avowed for rent in arrear. The plaintiff replied, 1. No rent in arrear. 2. *Non demisit.* 3. If a lease, the tenant was evicted by the landlord before the expiration of the lease. 4. That the article replevied is the property of the plaintiff, and not of *John Bombaugh,* the tenant.

Several bills of exceptions were taken on the trial. The *first* was to the admission of the record of *David Milliken,* Esq., a justice of the peace, of a proceeding commenced before him the 1st of *April,* 1824, in which *John Bombaugh,* tenant, was complainant, and *James M'Conachy,* landlord, defendant, to set off the tenant's just account against the landlord, who had distrained his goods for rent; the justice having decided, on hearing the parties, that no rent was

(Kessler *v.* M'Conachy.)

due from *Bombaugh* to *M'Conachy*, and that he was justly indebted to *M'Conachy* in the sum of four dollars forty-eight and three quarter cents. To the admission of this evidence the defendant objected. The court rejected the evidence, and sealed a bill of exceptions.

The plaintiff next offered *Bombaugh*, himself, as a witness, to testify in respect to the lease, and the ownership of the stove. The court rejected his evidence, and sealed a second bill of exceptions.

To support an account against the landlord, a book, sworn by *Bombaugh* to be his book of original entries, was next given in evidence by the plaintiff, as a set-off by the tenant against the rent; and, to meet this evidence, *M'Conachy* offered his book of original entries, supported by his oath and that of *David Milliken*, Esq.

*M'Conachy* swore as follows:—" This is my book of original entries; my journeyman made the entries, some of them on a slate. He gave it in, may be, made, the same evening; don't think any as long as two weeks; I suppose less than two weeks; some of them made the same evening, or next day; some of them in the week; some done by myself."

The evidence of *David Milliken* was to this effect:—" I don'; recollect the book. This account was before me on the question about the rent. I think he then said, that some he entered off the slate soon, and some might have stood near a couple of weeks."

Some alterations and erasures were apparent in the book, but it was admitted, and the court sealed a third bill of exceptions.

Evidence was given by the plaintiff to prove his ownership of the stove, which it appeared he had purchased of *Bombaugh* for the wood-work of a wagon, and left it in his shop till he should send for it. The plaintiff also proved an eviction of *Bombaugh*, the tenant, by the landlord, on the day before the expiration of the lease, which appeared to be for a year, the rent payable monthly. The distress was for eleven months rent in arrear.

The following charge was delivered to the jury by BURNSIDE, President:—

" The Supreme Court have decided, (*O'Donnel v. Seybert*, 13 *Serg. & Rawle*, 57,) that where property is found on the premises, although it does not belong to the tenant, it is liable to the landlord's distress; and in the same book, pages 180, 181, that the goods of a stranger, found on the premises, are liable to distress for rent, is one of the early doctrines of the common law; the reason of which has long since ceased. Courts of justice have, in many instances, leaned against it, but, it transcends judicial power to abrogate it. However, if rent was due, and unpaid, and no eviction, the stove in question was liable to distress, unless it was exempted by the poor laws. The premises rented were a shop. The family of *Bombaugh* lived at a distance, in a separate house. The stove distrained was in the shop. *Bombaugh* had a stove rented in the house in which his family resided. By the act of the 29th of *March*,

(Kessler *v.* M'Conachy.)

1821, one stove in the possession of any debtor, shall, and is hereby exempted from levy, &c. (His Honour here read the act.) I think it is the family stove that is exempted; the stove that warms his wife and children, and that this is the sound and true construction of the act. Whether then, the stove was transferred to *Kessler* or not, I hold, that if there was rent fairly due, and unpaid when the distress was made, the landlord might legally distrain it. What was the extent of the lease? How was the rent payable? You have evidence that it was leased for a year, payable monthly. Where the rent is payable monthly, the landlord may distrain after the end of any one month, for the rent due and unpaid. It is said, *M'Conachy* evicted *Bombaugh* before the end of the lease. Did he do so? You have heard the evidence on this point, and you will judge of it. If you are satisfied that the landlord entered on the tenant before the end of the lease, the rent would be suspended. I agree to the position, that if the lessor enters into a part, the whole rent is suspended. Here the rent was payable monthly. He entered on the last day, that is, if there was an eviction, it was on the day before the tenant should have removed; I think it suspended the last month's rent, and no more; for that month there is no distress. This opinion is given under the particular circumstances of the case. The distress was for eleven months rent; it could be for no more, for the last month could not be distrained for, until the rent was due. The amount was eleven dollars. The defendant's book account, if you believe it just, amounts to nine dollars and eighty cents, making twenty dollars and eighty cents. *Bombaugh's* book account amounts to twelve dollars and one-fourth of a cent, leaving eight dollars and seventy-nine and three-fourth cents of rent due and unpaid.

" You are the judges of these books. If you think the books are not books of original entry, you ought to reject them. If you think any of the items have been altered to meet this case, it will destroy such entry, and such a book ought to be rejected by the jury. Here there was no appraisement; so far the landlord proceeded irregularly, and he ought to be charged with all the items distrained, and the full value of them before the stove is taken into consideration. If those goods are worth eight dollars and seventy-nine and three-fourth cents, then there should be a verdict for the plaintiff; and, as he has had the property delivered to him, you will give him damages for the unreasonable distress. But after deducting the articles that were distrained from the amount of *M'Conachy's* demand, that is, the eight dollars and seventy-nine and three-fourth cents, or such other sum as you shall fix upon, you will find the balance of rent due *M'Conachy*, the avowant. There is a point made by the defendant's counsel, that *Kessler* never purchased this stove; if so, he cannot recover in this action."

The following errors were specially assigned:—

" 1. The court erred in rejecting the evidence contained in the *first* bill of exceptions.

(Kessler v. M'Conachy.)

" 2. The court erred in rejecting the evidence contained in the second bill of exceptions.

" 3. The court erred in admitting the evidence contained in the third bill of exceptions.

" 4. The court erred in charging the jury, that the goods of a stranger, found on the premises, were liable to be distrained for rent.

" 5. The court erred in charging, that the stove in question was liable to the distress.

" 6. The court erred in charging, that the eviction of the tenant by the landlord, suspended no more than the last month's rent.

" 7. The defendant's avowry does not name for what lands the rent was due, how much was due, when, nor by whom due, and the jury have not found the value of the property distrained."

*Benedict*, for the plaintiff in error, argued, 1. That the decision of the justice, offered in evidence on the trial, was admissible and conclusive. The proceeding before him, was instituted in order to obtain a defalcation of the debt due from the landlord to the tenant, under the provisions of the twentieth section of the act of the 20th of *March*, 1810. *Purd. Dig.* 458. The landlord appeared, was fully heard, and did not appeal from the decision. He is now estopped from disputing the judgment, and it is very oppressive to put the tenant a second time to the trouble of proving the same facts, and still more so, to deprive the stranger, whose goods have been wrongfully seized, of the benefit of that estoppel. It may not always be in his power to prove the same facts which the tenant had proved; and thus the landlord, although precluded by the judgment from proceeding further against the tenant, is at liberty to avail himself, against an innocent stranger, of the summary and severe process of enforcing by distress the payment of rent, to which a competent tribunal has solemnly decided that he is not entitled.

2. It was error to reject the testimony of *Bombaugh*. As a witness, he was disinterested, for his interest was equally balanced. If the landlord recovered against *Kessler*, he would have been liable to *Kessler* for the same amount as to the landlord.

3. On the *third* bill of exceptions he insisted, that *M'Conachy's* book was not evidence, and cited, *Smith v. Lane*, 12 *Serg. & Rawle*, 86, 87, 88. *Sterrett* v. *Bull*, 1 *Binn.* 237. *Curren* v. *Crawford*, 4 *Serg. & Rawle*, 5. *Crouse* v. *Miller*, 10 *Serg. & Rawle*, 155. 1 *Bro.* 147, 344. *Vance* v. *Fairis*, 2 *Dall.* 217. *S. C.* 1 *Yeates*, 321. *Patton's Administrators* v. *Ash*, 7 *Serg. & Rawle*, 126. *Cutbush* v. *Gilbert*, 4 *Serg. & Rawle*, 555. 1 *Dall.* 239. *Ingraham* v. *Bockius*, 9 *Serg. & Rawle*, 285. *Salk.* 285.

4. In respect to the charge of the court, he argued, that the goods of a stranger were not liable to distress. The right of distraining for rent is entirely founded on the relation between landlord and tenant. It has its origin in the feudal tenures of ancient times, when the subject demised was generally a farm, cultivated by an

(Kessler *v.* M'Conachy.)

inferior, whose humble furniture, stock, and implements of husbandry, constituted all the moveable articles found upon the land; when the haughty barons, disdaining the slow progress of a law suit, and considering non-payment by their tenants as a breach of the fealty due from them, anticipated the effect of a judgment and execution, and rudely seized their tenants' goods. The great owners of lands thus possessed of an advantage, which no other creditor shared with them, had influence enough to carry the practice beyond its original limits; but, if it is reduced to its true principles, it cannot be extended to the adventitious and temporary occupancy of a mere stranger, one who knows not, at the time of leaving his goods upon the spot, that any rent is due, or perhaps, that any lease exists, and who suffers the same injustice in having his goods distrained for the rent of another, as he would in having them levied on by an execution for the debt of another. He cited, 4 *Cranch,* 299. *Com. Dig. Rent, c* 4. *Co. Litt.* 148, *b.*

5. The court also erred in charging the jury, that eviction only suspended the rent prospectively. He contended, that it terminated the landlord's claim in regard to all antecedent rent, as well as to that which should come due afterwards, and quoted, *Com. Dig. Suspension, D. Vaughan* v. *Blanchard,* 1 *Yeates,* 176. *Gilb. on Rent.* 179. 4 *Dall.* 124. *Gilb. Ev.* 283, 279. 4 *Bac. Ab.* 369.

*Hall,* for the defendant in error, insisted that the certificate of the justice was properly rejected. The proceeding before him was *res inter alios acta.* The judgment in a personal action cannot be given in evidence against one who is no party, although where the proceedings are *in rem,* the rule may be different. If the decision of the justice had been the other way, it would not have been binding on the plaintiff in replevin; and upon the issue of no rent in arrear, the defendant would have been obliged to make other proof of the rent due. The time when the proceeding was commenced before the justice, is an additional reason for rejecting the evidence. The distress had actually been made, and was proceeding in the manner prescribed by law, when the landlord received the summons to appear before the justice. If he had disregarded it, judgment would have been given against him by default, for any sum which the tenant, on an *ex parte* hearing, might plausibly have made out to be due.

2. The rejection of *Bombaugh's* testimony certainly was correct. It is impossible to show that his interest was equal either way. If he could establish that no rent was due, neither *Kessler,* the plaintiff, nor *M'Conachy,* the landlord, would have any demand against him; but if *M'Conachy* established the demand against *Kessler,* he would be entitled to sue *Bombaugh,* not only for the value of the stove, but for the costs and expenses of the replevin. *O'Donnel* v. *Seybert,* 13 *Serg. & Rawle,* 57.

3. It was proper to let *M'Conachy's* book go to the jury, who would determine according to the principles justly laid down by the

presiding judge. 4 *Serg. & Rawle,* 3. 9 *Serg. & Rawle,* 285. 16 *Serg. & Rawle,* 133. 2 *Mass. Rep.* 221.

4. It is now too late to assert, that the goods of a stranger, found on the premises demised, are not liable to distress. The peculiar remedy afforded to a landlord, has been too long incorporated into the very nature and essence of landed property, to admit of being separated from it, unless by some act of positive legislation. Improved lands have been purchased, and vacant lands have been improved with the understanding, that the landlord's right to enter and distrain upon all chattels to whomsoever they might belong, which were found upon the premises after rent became due, was inviolable. The established form of setting forth the cause of taking goods, is an avowry, or acknowledgment, that they were taken by the landlord for rent due to him from the tenant of the *locus in quo,* and not from the plaintiff in the replevin as such; and the replication, that the goods in question belonged to the plaintiff, and not to the tenant, was a nullity.

5. In respect to the eviction, he contended, that it only suspended the rent to come due.

6. All objections to the form of the avowry, were waived by proceeding to trial; and it was unnecessary in this case, where the article was delivered to the plaintiff, to find its value. *Weidel* v. *Roseberry,* 13 *Serg. & Rawle,* 178.

The opinion of the court was delivered by

Rogers, J.—We agree with the Court of Common Pleas, "That the property of a stranger, found on the premises, is liable to distress by the landlord." And this on the authority of *O'Donnel* v. *Seybert,* 13 *Serg. & Rawle,* 57. *Weidel* v. *Roseberry,* 13 *Serg. & Rawle,* 180, grounded on the principles of the common law; and, as we think, the proper construction of the act of the 1st of *March,* 1772, entitled an act for the sale of goods distrained for rent, &c.

Where the goods of a stranger are taken for rent, the tenant will be liable over, and the measure of damages will be, the loss sustained by the sacrifice of property, and in this case, the costs of the replevin; and this is a sufficient answer to the *second* bill of exceptions, whether the tenant is a competent witness in the action brought by the stranger. He would not be equally interested, as argued at the bar, but his interest would be greater in favour of the plaintiff in replevin. 13 *Serg. & Rawle,* 57.

The plaintiff in error has taken *seven* exceptions, all of which, it will be unnecessary particularly to consider. We shall content ourselves with citing a single authority, and observing, that the *fifth* and *seventh* exceptions have not been sustained. *Weidel* v. *Roseberry,* 13 *Serg. & Rawle,* 178.

The points principally relied on, are those embraced in the *third, fifth,* and *sixth,* exceptions.

(Kessler *v.* M'Conachy.)

The defendant in replevin offered in evidence what he called his book of original entries, accompanied by his own oath, and the oath of *David Milliken*, Esq. The defendant, *M'Conachy*, being sworn, says, "This is my book of original entries. My journeyman made the entries, some of them on a slate. He gave it in, may be, made, the same evening. Don't think any as long as two weeks. I suppose less than two weeks. Some of them made the same evening, or next day. Some of them in the week; some done by myself."

*David Milliken*, Esq. says, "I don't recollect the book. This account was before-me on the question of rent. I think he, (*M'Conachy*,) then said, that some he entered off the slate, and some might have stood near a couple of weeks."

Several objections occur to this evidence. The entries were first made by the journeyman on a slate, and if they had been copied by him in a reasonable time, and proved by his oath, there would have been no objection to the testimony; or, if *M'Conachy* had made the entries, and had afterwards copied them in the book, it might have been deemed sufficient. And this would have been extending the principle as far as good policy requires. It was, however, copied by *M'Conachy*, not immediately, nor on the same evening, but some of the items may not have been entered for nearly two weeks after the work is alleged to have been done. *Vance* v. *Fairis*, 1 *Yeates*, 321. The defendant relies on his own oath, without producing the journeyman, or accounting for his absence, by which he deprives the plaintiff of the benefit of a cross-examination, and the possibility of showing from his testimony, that the work had not in fact been done. The defendant, as it would appear, derived his knowledge from the entries on the slate, from which he extracted the charges in the book. The admission of the oath of a party, to prove a book of original entries, is from necessity; and where the necessity does not exist, to avoid abuse, it should be received with caution. The entries should have been made, and transferred on or about the time the work was done; and it was incumbent upon the plaintiff to distinguish the items that were so made. To admit in evidence, entries after a week or more, would necessarily cause mistakes, and might be the means of great fraud. Books of original entries are, at best, but dangerous evidence, and we think, call for more clear proof than has here been given.

It is said, there was error in instructing the jury, that the eviction of the tenant by the landlord, suspended the last month's rent, and no more. In this we perceive no error. The property was leased for a year, the rent payable monthly, and the eviction took place the day before the lease expired. The general principle is, that if a lessor enter upon the lessee for life, or years, into part, and thereof disseise, or put out the lessee, the rent is suspended in the whole, and shall not be apportioned for any part. *Co. Litt.* 148, *b.* An interruption in the enjoyment of the premises demised, will

suspend the rent. 4 *Dall.* 125. 4 *Cranch*, 299. *Com. Dig. title Rent, C.* 4. *Com. Dig. title Suspension, D.* 1 *Yeates,* 176. *Gilb. on Rent,* 179. *Gilb. L. E.* 270, 283. 4 *Binn.* 369.

Where the lessee takes a lease of part of the land, or enters wrongfully into part, there are a variety of opinions, whether the *entire rent* shall not be suspended during the continuance of such lease, or tortious entry; and in the last case, it seems to be the better opinion, and the settled law at this day, that the tenant is discharged from the payment of the whole rent, till he be restored to the whole possession, that no man might be encouraged to injure or disturb his tenant in possession, whom, by the feudal law, he ought to protect and defend. 4 *Bac.* 369, *title Rent, letter M.* Thus it will be perceived, that where the lessor enters on a part, the entire rent for the whole premises is suspended; and the reason given is, that the rent cannot be *apportioned.* In this case, the entry was on the whole, but the rent had been *apportioned by the parties,* so that the question remains, how far the doctrine of suspension extends; whether it embraces the rent for the year, or the last month, which was not then due. The suspension of the rent is intended as a punishment, and operates in the nature of a forfeiture, so that we do not feel inclined to extend it further than the adjudged cases. On a careful search, I do not find any case in which the precise point has occurred; we, therefore, feel ourselves at liberty to give the rule such a construction as may be most reasonable. We are of the opinion, that the court were right in confining the suspension of the rent to the month not due. As the rent was payable monthly, the landlord might distrain at the end of each month. To extend the principle further, might, in some cases, operate as a most grievous penalty; as where there was a lease for five years, the rent payable annually, but remaining unpaid, and an eviction, perhaps, through mistake, the last day on which the lease expired.

The landlord's warrant was dated the 30th of *March,* 1824, and the distress was made the 31st of *March,* on which the constable levied a stove and pipe, which is the plaintiff's cause of action. On the 1st of *April,* 1824, the tenant, in pursuance of the twentieth section of the act of the 20th of *March,* 1810, entered a proceeding to compel the landlord to defalcate, or set off an account, which he alleged he had against the landlord. On hearing, the justice decided, that there was no rent due to *M'Conachy,* and that he was indebted to *Bombaugh,* the tenant, four dollars and forty-eight cents. The plaintiff in replevin having replied to the avowry, no rent in arrear, offered the record in evidence.

In general, no one can be bound by a verdict or judgment, unless he be a party to the suit, or be in privity with the party, or possess the power of making himself a party. For it is said, and with the utmost justice, that he should not be bound by the result of an inquiry to which he was altogether a *stranger.* And this is said to be universally acknowledged, and is certainly supported by a host of

(Kessler *v.* M'Conachy.)

authorities, which I do not intend to controvert. I also concede, that it is a *general*, but by no means a *universal rule*, that a verdict shall not be used as evidence against a man, where the opposite verdict would not have been evidence for him; or, in other words, the benefit to be derived from the verdict must be mutual. And the reason given for the rule is, because, if he be an utter *stranger to the fact*, it is perfectly *res nova*, between him and the defendant; and, if it be no *prejudice* to the plaintiff, had the fate of the verdict been as it would, he cannot be entitled to seek a benefit, for it would be unequal, since the cause is a *new matter* between the parties, that the jury should be swayed by any prejudice; (*Gilb. L. E.* 1 *Stark.* 195, *in note;*) and because the former verdict may have been obtained upon the evidence of the party, who seeks to take advantage of it. That these are general rules, there can be no doubt, and if this case comes within them, the evidence was properly rejected. In assigning the reasons, which induce the court to differ in opinion from the Common Pleas, it will be necessary to attend to the relative situation of the parties. The plaintiff's goods were taken to satisfy the rent alleged to be due, because being on the premises at the time of the distress, the law presumes, (which presumption, from motives of policy cannot be rebutted,) that they are the goods of the tenant. The plaintiff concedes this, and pleads, no rent in arrear; and alleges, that the matter has been tried by a court of competent jurisdiction, of which, he offers record evidence; which is opposed, because it is *res enter alios acta*, and on the ground of a want of mutuality. It is contended, that it ought to be admitted as the evidence of a fact, and an adjudication *in rem*. We do not consider the plaintiff in replevin a stranger to the controversy between the landlord and tenant; on the contrary, the issue between them was one in which he was materially interested; for if there was no rent in arrear, there was no pretence on which his goods were liable to seizure. If *Kessler* had been offered as a witness before the justice, would any person say he would have been a competent witness? And, upon what other principle would he be rejected, than because he was interested in defeating the landlord, and by this means, relieving his goods from distress. You cannot separate their interests; for, unfortunately for *Kessler*, they are embarked in the same bottom.

We will now proceed to show some cases, where, merely because they are engaged in the same transaction, although not parties to the judgment, these general principles have been thought most to apply. Thus a suit on a joint and several bond, against each of the obligors, a verdict and judgment for one, which are offered in evidence, or pleaded in favour of the other; upon what principle is this a defence; but because, although not parties to the suit, they are so far interested in the same transaction, as that a verdict and judgment for one, is conclusive for all. But, reverse the case, and suppose the verdict and judgment for the obligee, if evidence

(Kessler *v.* M'Conachy.)

at all, which is questionable, it certainly would not be conclusive. And here it might be argued, there would be a want of mutuality. In an action, by A. against B., to recover damages, for the value of a slave sold by B. to A., and who had been recovered by a paramount title, by C. from A., the record of the action between C. and A., is evidence of the fact of eviction, and of the damages; but, as is said, not of C's. title. *Saunders* v. *Hamilton,* 2 *Hayw.* 226, 282. *Blasdale* v. *Babcock,* 1 *Johns. Rep.* 517. *Tyler* v. *Ulmer,* 12 *Mass. Rep.* 166. So, also, if suit be brought against the sheriff, for an escape, and a verdict for the defendant, in an action on the recognisance, the verdict would be evidence for the sureties.

It was not contended, that the record was conclusive; but, *prima facie* evidence of the fact, of no rent in arrear. And, in this view, the case of *Carmack* v. *The Commonwealth,* 5 *Binn.* 184, is an authority, which has an essential bearing on the question. It is there decided, that a judgment, in an action against the sheriff alone, of which his sureties had no notice, is *prima facie,* although not conclusive evidence, as to the amount of damages in a subsequent suit, upon the recognisance, against the sheriff and his sureties. And surely, if it was evidence against them, it would be evidence for them, in the event of a different finding, and this would, I conceive, be this very case. The record of a recovery in ejectment, against a covenantee, is not conclusive evidence against the covenantor, if he had no notice of the ejectment. *Leather* v. *Poultney,* 4 *Binn.* 356. It was not disputed, but that it was *prima facie* evidence.

It is said, the judgment was properly rejected, as being *res inter alios acta.* This I do not understand as confined to judgments, and if it should be construed to extend to every transaction between the landlord and tenant, (and it is difficult to draw the distinction,) it would leave the stranger without remedy. It will hardly be contended, but that the declarations, or admissions of the landlord to his tenant, would be evidence; and if a settlement had taken place between them, the stranger might avail himself of it, and yet it would be liable to the objection of being *res inter alios acta.* A settlement may be given in evidence, but according to the argument of the defendant in error, a judgment confessed upon that settlement cannot. If a landlord recovers judgment, issues execution, and levies the rent by due course of law, it would be singular if the legal satisfaction would not be evidence in a suit between him and a stranger, on whom he had distrained for the same rent. What are the consequences of the doctrine? If the tenant had brought the replevin, which he might, the record would have been conclusive on the plea of no rent in arrear. But by excluding the record, you enable the landlord to recover the rent, although it has already been decided by a court of competent jurisdiction that none was due, in a suit in which he had full opportunity of being heard,

(Kessler *v.* M'Conachy.)

and where there has been an express adjudication, upon the very matter in controversy. One of two consequences must necessarily follow; either the plaintiff is without remedy, or he must bring suit in which he may recover not only the amount of the rent, but his damages and costs. The landlord effects that indirectly, which he has failed to do in a suit between himself and his tenant. This would give an opportunity for collusion between the tenant and the landlord to defraud the stranger, or for collusion between the stranger and the landlord to defraud the tenant. The truth is, they are such privies in interest, as to bring them strictly within the exception to the general rule. The testimony is not liable to the objection, which always struck me as the most forcible, that the judgment may have been obtained upon the evidence of the party who seeks to take advantage of it; for *Kessler* would have been incompetent on the ground of interest. It does not come within the rule *res inter alios acta*, as that applies to a stranger, which he is not, inasmuch as he has a direct and immediate interest in the suit; nor will the objection of a want of mutuality avail the defendant in error, as although good as a general rule, it is by no means without exception. Evidence may frequently be given against a party, which cannot be heard in his favour.

All that has been heretofore contended is, that the record was *prima facie* evidence. There is, however, a class of cases, which it resembles more in principle than the general rule, to which it has been likened. It is an adjudication *in rem*, upon the precise point in dispute, between the real parties, the landlord and tenant, which binds not only them, but all who stand in the relation of privies in blood, or estate, or privies in law. It is not essential, that either the parties, or the form of action, should be precisely the same; if they are substantially so, it is all that is required. They are substantially the same for all legal consequences to the tenant; for it cannot be doubted, that in case the plaintiff in replevin be bound to pay the rent, the tenant would be answerable over; and this is the principle we have decided in this case, and with, as I understand, the assent of the whole court. If the landlord had distrained the goods of the tenant, he would have been estopped by the judgment; but, as he has thought proper to proceed against the goods of a stranger, it is contended, it is not even *prima facie* evidence.

The record is admissible on another principle. A judgment, ascertaining a precise fact, character, or privilege, is always evidence, whenever that fact, character, or privilege, comes in question between other parties. 2 *Str.* 1109. 5 *Burr.* 2601. 1 *Burr.* 146. 9 *Mod.* 66. 1 *Stark. on Ev.* 188. 7 *Cranch*, 318. The admissibility of the judgment, to prove the fact itself, and with a view to its legal consequences, is on the ground, that every such judgment may be considered as operating *in rem.* 1 *Stark.* 188. The fact in issue was, that there was no rent in arrear, asserted by one, and denied by the

other; and it is no answer to say, that it goes the whole length of supporting the plaintiff's action. It will be observed, that the plaintiff in replevin does not insist upon the judgment as an estoppel, (which he might, it being substantially a trial between the tenant and landlord,) but merely offers the record as *prima facie* evidence of the fact, of no rent in arrear. And what better, or more unexceptionable proof could there be of that fact; to what objection is it exposed? The landlord had a full and fair trial before a court of competent jurisdiction. He acquiesces in the decision of the justice, and is estopped to deny the truth of the finding; and yet he contends, it is not even evidence in a suit where the precise point is in issue, between him and a person whose goods were only liable because they were on the demised premises at the time of the distress. If this should be the law, in cases where it had been adjudged there was no rent due, the landlord will merely have to watch when the goods of a stranger are upon the premises, on which he may distrain, and by this means, avoid the legal consequences of a judgment against him.

GIBSON, C. J. dissented as to the admissibility of the judgment given by the justice of the peace, and gave the following opinion:—

As to one point, I regret that I cannot concur in the opinion just delivered. It is an admitted rule, that no one shall have advantage from a judgment, who would not have been prejudiced by it; and, if there be any imaginable case to which it is applicable, it seems to me this is one. I do not see how it can be maintained, that there was privity between the plaintiff and the tenant. The goods were distrained merely because they happened to be on the premises, and not in consequence of any supposed relation of the parties. It is, however, urged with some plausibility, that as the owner would have an action against the tenant for money paid to his use, the landlord would be able, notwithstanding the judgment in favour of the tenant, to recover the rent from him circuitously. But would the judgment be evidence against the owner of the goods, (for that is the test,) in case it had been in favour of the landlord? The owner certainly would not be the less a stranger, because he would have his action over against one who might not be worth a shilling. But a verdict and judgment operate as an estoppel, which Lord COKE says, *Co. Litt.* 352, *a*, binds only parties and privies; so that a stranger shall neither take advantage of it, nor be bound by it; and in specifying the different sorts of privity that may exist in the law, 3 *Co.* 23, 4 *Co.* 123, he says not a word about privies in responsibility. In *Patton* v. *Caldwell*, 1 *Dall.* 419, such privity was held to be insufficient to introduce a verdict against one underwriter to affect the others, without an agreement on their part to be bound by it. The best writers say that a judgment is evidence only against those who claim as privies in *blood*, or *estate*, or in *law*. *Stark. Ev. part II.* 192. 1 *Phil. Ev.* 245; neither of which in-

(Kessler *v*. M'Conachy.)

cludes the owner's case; and if he be neither party nor privy, I can see nothing to take it out of the general rule. Those instances which are usually adduced as exceptions, are in fact not so; the record being received, not as evidence of the FACT ADJUDICATED, but as being the VERY fact. On this elementary distinction, which is illustrated in *Burr* v. *Gratz*, 4 *Wheat.* 213, we ruled the case alluded to, as having been decided in 1827, at *Pittsburg*. There, a defendant in ejectment, who had set up an old title in a third person, was permitted to show the record of a recovery by such third person against the plaintiff in the action at bar, not to prove that the stranger had the better title, (the fact adjudicated,) but to rebut a *presumption* from lapse of time, of his having abandoned it: and, to that end, the judgment was held competent as a distinct and independent fact. Now, for what was the judgment of the justice offered here? Not to show the naked existence of a proceeding between the landlord and the tenant, or that the tenant denied that any thing was in *arriere*—and without operating as an estoppel, it could prove nothing else—but to show the fact adjudicated, that no rent was in truth due when the distress was made. Mr. *Starkie* speaks of the object for which a judgment may be offered; whether with a view to establish the mere fact, that such a judgment was pronounced, and the legal consequences of such fact, or as a medium of proving some fact found by the verdict: and, where such fact has been found in a matter of private right, in regard to which the reputation of the country would be inadmissible, he says, the record is clearly incompetent to prejudice or benefit a stranger; *Treat. Ev. part II.* 182, 186, 187; the excepted cases being, where the proceeding was *in rem*, to which all the world is in law a party, or where the matter is of a public nature, to which all the world is in fact a party. Now, the judgment here was certainly *inter partes*, and in a matter of private right; and, what are its legal consequences as divested of those incidents that would appertain to it between parties or privies? Certainly not the establishment of the fact found by the justice, that no rent was in arrear, and an estoppel of the landlord to deny it. There are, however, material consequences, which sometimes proceed from a judgment nakedly considered as an occurrence or an act: such, for instance, as the justification of an executor in paying a debt *bona fide* recovered of him, whether it was originally just or not: and such are the consequences to which the elementary writers allude. But, if the judgment, here, were offered to produce any other consequence than to establish the fact found by the justice, I am unable to perceive it.

The rules of evidence are founded, no doubt, in technical reason. But we must not forget that it is not reason, but convenience which requires that a judgment be conclusive in any case. But that it should ever after prevent an injured party from showing the truth against all persons, is required neither by reason nor convenience.

(Kessler *v.* M'Conachy.)

That a judgment should not conclude one who had no opportunity to contest the matter, seems to be required by the plainest principles of natural justice; and, on the other hand, that mutuality of advantage, which has become the foundation of a familiar maxim of equity, equally requires, that he should not derive a benefit from it. But, however we may esteem the law of evidence, it ought not to admit of a question, whether its obligation be not paramount to all considerations of reason or expediency. Systems of jurisprudence are necessarily complex and artificial; and, although the law of evidence be not the perfection of reason, justice will, perhaps, not be promoted by relaxing any of its rules.

I am not, however, for rejecting the record, merely because the proceeding was instituted subsequently to the distress. It was offered to prove a pre-existing fact; and evidence is not the less competent, because it has arisen since the inception of the proceeding in which it is produced. Nor do I rely on the denial of the right of appeal, by which the landlord is effectively deprived of a trial by jury; a circumstance which ought, perhaps, to exempt this particular case. My objection is founded on the general rule, as I have stated it; according to which, it seems to me, the record was properly excluded.

Todd, J. dissented on the same point, but only because the proceedings before the justice were instituted after the landlord had distrained.

Judgment reversed.