## SICKLES vs. MATHER.

The *account books* of a *manufacturer,* properly authenticated, are admissbile in evidence, in an action by him against his customer, although entries were originally made by a *foreman* in the factory, if such entries were made only for a temporary purpose on a *slate,* and were from time to time *transcribed* by the principal into his day book.

An employee who attends to sales no farther than merely delivering goods manufactured, and keeping a memorandum of the delivery for a temporary purpose, is not a *clerk* within the meaning of the rule, requiring proof of the original entries.

Where there are *mutual accounts* between plaintiff and defendant, an item of the account on either side accrued within six years next before suit brought, draws after it the accounts on both sides, and takes a case out of the operation of the *statute of limitations.*

ERROR from the New-York common pleas. Mather sued Sickles in *assumpsit* for goods sold and delivered. The defendant pleaded the *general issue and the statute of limitations.* The cause was heard by referees. The plaintiff, a *manufacturer of ink,* produced a bill of particulars, consisting of charges on nine different days, for divers quantities of ink sold to the defendant between the 12th day of January, 1830, and the 18th February, 1831, amounting in the whole to the sum of $224.57. The suit was commenced on the 19th July, 1836, and only *four* of the charges, amounting to $53.20, were of a date *within six years* previous to the commencement of the suit. The plaintiff called as a witness one *James Lightbody,* who testified that he was then, and had been in the plaintiff's employment as *foreman* in his factory for the last ten years, and had delivered all the ink that the plaintiff had sold within that time ; that he had furnished the defendant with ink, which he had delivered at different times, and on one occasion in particular, he delivered 12 kegs of ink to go on board of a vessel. He could not recollect the particular month or year when he delivered ink to the defendant ; could not swear positively to any of the items in the plaintiff's account nor could he say in what year the 12 kegs were delivered, but *thinks* he delivered ink to the defendant in the years 1830, and

Sickles *v.* Mather.

1831. He further testified, that the plaintiff had not kept a *clerk;* that he (the witness,) kept a *slate* at the factory, upon which he made *memoranda* of the ink delivered, and that the plaintiff from the slate made his entries in a *day-book;* that the plaintiff used to take the slate home, sometimes every day, and sometimes every two or three days, as was found convenient for the purpose of transcribing. The plaintiff kept a day-book and ledger, all the entries in which were made by the plaintiff. The books were kept at the plaintiff's house near the factory. He (the witness,) had never made an entry in the books, which were produced and identified by him. Two other witnesses testified, that they had dealt extensively with the plaintiff, and had settled accounts with him from his books, which they had always found to be correct; and that he kept honest and fair books. The plaintiff's counsel offered the books in evidence, to the reception of which the defendant's counsel objected, on the grounds : 1. That *Lightbody* was to all intents and purposes within the meaning of the rule of evidence on this subject, a *clerk,* and therefore the books were inadmissible ; and 2. That they were inadmissible, because the entries in the same were made from a *slate* kept by the witness at the factory. The objection was overruled, and the books received in evidence. A witness called by the defendant testified that he was an apprentice of the defendant from 1826 until 1831 or 1832, during which time, and until he left the defendant, he often saw *Lightbody* bring ink to the defendant's office. Another witness testified, that on the 12th March, 1830, he purchased of the defendant 12 kegs of ink, which the defendant had on that day received from the plaintiff; that he made the purchase to supply an order from the south. In the plaintiff's bill of particulars, there was a charge of 12 kegs of ink, under date of 12th March, 1830. The defendant also produced a bill of particulars before the referees, and claimed a *set-off;* two of the items of which were of the date of *March,* 1830, which were admitted by the plaintiff and allowed by the referees. The plaintiff's books contained an account as charged in his bill of particulars, except three items, which were not allowed by

the referees.    The plaintiff obtained a *report* for $217.63, which the defendant moved the common pleas to set aside. That court confirmed the report of the referees, and rendered judgment for the plaintiff.    The defendant sued out a writ of error, and the cause was submitted, on written arguments, by

    *R. Lockwood*, for the plaintiff in error.

    *H. Holden*, for the defendant in error.

    *By the Court*, COWEN, J.    It is not denied that if there were mutual accounts current, and any one item on either side was proved to have arisen within six years next before the suit brought, this will draw after it both accounts, and take the case out of the statute of limitations.    Thus the inquiry here brings us, in some measure, down to the admissibility of the books of the plaintiff below.    They contain dates within the six years ; and if competent evidence, they are so as well in respect to the date of the sales, as of the sales themselves.    It is to be noted, however, that both Lightbody and the defendant's witness Hall, gave evidence upon which the referees might well have been satisfied, that ink was delivered within the six years, so that we are not driven for time to the books alone.

    The books were, however, essential to the main question in the cause ; for there was no other adequate proof of the plaintiff's account.    Were they admissible ?    It is said, first, that the plaintiff had a clerk ; and if so, they were clearly inadmissible according to *Vosburgh* v. *Thayer*, 12 *Johns. R.* 462.    Lightbody calls himself foreman, and says he never in his life made an entry in the plaintiff's books.    This certainly does not look like his being a clerk.    The object of the limitation doubtless was to withhold secondary evidence, with which the books alone must certainly be classed, until it shall appear that, at least, the party was without a regular clerk, whose business it is to notice the sales and make entries as they occur in the journal.    He is then the only admissible witness.    At any rate, this is so as to all the entries, unless it appear affirmatively that some of them were in

fact not made by him. *M'Allister* v. *Reab*, 4 *Wendell*, 483. Several cases in states where the party's suppletory oath is allowed, exclude books as evidence of transactions, when it appears they were in fact known to third persons. Such a precaution would be of very little utility in this state, where the party is not sworn, and it is, therefore commonly impossible to learn that others could testify. Lightbody was not in any sense a clerk for the purpose of verifying the books. A clerk can connect them with the sales, (many of which he usually makes himself,) and his original entries, (to the general accuracy of which he can make oath,) become themselves evidence of what he may in fact have forgotten. *Merrill* v. *The Ithaca & Owego Railroad Co.*, 16 *Wendell*, 596 *to* 600, *and cases there cited*. It would clearly be going beyond the meaning of the qualification in *Vosburgh* v. *Thayer*, to say that a man about a factory who attends no farther to sales than the mere delivery of goods, and noting the fact for a temporary purpose upon a slate, should be esteemed the only competent witness to establish all the sales and entries of his principal.

Then as to the manner in which these entries were made. We have, with what degree of wisdom, time must determine, held that books of original entries made by the party, shall be evidence in his favor, under certain qualifications; and this whether he be a merchant, or engaged in any other business. We do not require nor allow his own oath, a practice I believe peculiar to this state and that of New-Jersey. Even if this be a hazardous species of evidence, as every one, I think must allow, yet, I am at a loss to perceive that the adoption of an exception which shall exclude entries from a slate, is of any importance towards diminishing the danger. In those states where the suppletory oath comes in, I know there are several cases for and against the reception of entries thus made. If there be any degree of protection against abuse in such a restriction, it has there, at least, the merit of being a more practicable one; for the party can be interrogated as to the manner of his entry. With us we have ordinarily no means of showing this, and the case must be one

of a thousand in which it is disclosed. The witness who could speak to such a fact must in general, like the one in this case, be a third person who has made the slate memoranda himself. After all, perhaps the better considered cases are those that allow books in evidence which are made up from such memoranda, even where the party is a witness. So long as books are allowed at all, it is not very easy to perceive what great degree of additional accuracy or honesty we can give to them by forbidding the party to use a slate during the day, and transcribing from that into his book at night. It is a very common practice with men in all kinds of mechanical and other business conducted under circumstances which render the immediate use of pen, ink and paper inconvenient; and where such was found to be the ordinary course of the party, his books were received for that reason; *Faxon* v. *Hollis*, 13 *Mass. R.* 427; though where a journeyman was in the habit of making the entries on a slate, whence they were copied by his master after a long time, the manner was held exceptionable and the books rejected. *Kessler* v. *M'Conachy*, 1 *Rawle*, 441. Where one partner marked a sale of butcher's meat with chalk on his cart, and the other transcribed it on the return of the cart, the book was received on their oaths. *Smith* v. *Sanford*, 12 *Pick.* 139. So where a butcher's servant carrying out meat, marked the sales in pencil, which his master transcribed on his return. *Ingraham* v. *Bockins*, 9 *Serg. & Rawle*, 285. And see all the kindred cases in Pennsylvania, cited in *Forsythe* v. *Norcross*, 5 *Watts*, 332. Not to pursue the cases farther, it seems to me that the benefit to be derived from the qualification contended for by the counsel for the plaintiff in error, would not compensate for the great quantity of evidence which it would cut off even if we had the means of reaching it by testimony.

It is not denied by counsel that the plaintiff below was entitled to have his books received in evidence, under the limitations prescribed in *Vosburgh* v. *Thayer*; and we think he brought himself within that case.

The rule itself which receives the party's books, even with his

oath, seems to be regarded as of questionable policy, if we are to judge from the language of the courts and the course of decision in several states where it prevails. In some they appear disposed to load it with a multitude of restrictions as to the kind of business in respect to which books are to be received, and the manner in which they are kept, and the probability that better evidence may be had, &c. The rule is undoubtedly a departure from the common law, and may be a dangerous one : but that is rather an argument for repudiating it altogether than attempting to mitigate its virulence by feeble palliatives.

The judgment of the court below is affirmed.