### Charles Jackson v. Joseph Evans.*

A party's own entries on his books of account can not be admitted as evidence in his behalf, unless a *foundation* be first laid by proving that he had no clerk, that some of the articles charged have been delivered, that the books produced are the account books of the party, containing original entries; and by further proof by those who have dealt and settled accounts with him, that he keeps fair and honest accounts.

* See note, page 463.

JACKSON v. EVANS.

The servant of a man dealing in brick, who keeps a tally book or slate upon which he makes memoranda of sales during the day, reporting them to his employer at night, who enters the amounts upon his regular account books, is not a *clerk* within the meaning of this rule, and such regular account books are to be considered the books of original entries.

Where in charging the brick there was entered opposite, each charge of a load the name of the teamster who hauled it, these teamsters should all be called to verify the charges, or their absence accounted for, before the books are received in evidence.

It is not competent, in order to dispense with the necessity of calling the teamsters, to prove by others that if called it would not be possible for them to testify from recollection to the quantity hauled. The main fact to be established is that the articles have been delivered; and it is only on failure to prove the delivery, or the quantity, by the teamsters when called, that the books are received as the next best evidence.

The account books kept by a party are evidence of so slight a character that no extension of the rule which admits them, beyond the apparent necessity of the case, should be allowed. Both the servant who delivered and the teamsters who hauled the brick, in such a case, should be called, to testify to their recollection, and the books are only received as evidence' upon the presumption that no proof exists which has not been adduced.

The witnesses to prove that the party keeps honest books, should be able to identify the books, and to testify to settlements made from the entries on such books. It is not sufficient that they testify to having made settlements with the party, from bills presented, which they found honest, without being able to testify whether such bills were from the account books or not.

*Decided in* 1857.

Error to Wayne Circuit, where Evans brought assumpsit on the common counts, to recover of Jackson, and Jeremiah Moores, the value of certain brick. Moores died pending the suit.

On the trial the plaintiff called as a witness Theodore Evans, who testified that plaintiff was a brick-layer: that the book produced by witness was plaintiff's book of account in which he charged brick delivered by him, and from which he made out his bills. The witness looked at several pages in the book, and said the charges therein of brick delivered to Jackson and Moores were in plaintiff's hand writing: that he, the witness, delivera a few loads of brick in the fall of 1853, to the defendants, but he could not tell how many loads he delivered, or what quantity of brick. On cross examination he stated that he was in the plaintiff's employ, and that it was part of his business to tally the brick as they were put into the wagons to be hauled by the several team

sters of the plaintiff to the defendants: that he tallied most of the brick that were charged to the defendants, and what he did not tally he counted, and reported to the plaintiff all that were delivered to the defendants: that he told the men how many to draw, and where to draw them: does not know they did as directed, but knows some of them did : once in a while would coun a load, and then load the others in the same way, and estimate them as the same amount: the brick were sewer brick: those that were counted were piled in promiscuously : so were those not counted; most of the wagons held the same number. On re-examination he stated that they counted nearly every day: witness kept the number on a tally book or slate which he did not preserve : at night he reported to the plaintiff the number delivered during the day, and plaintiff entered the number thus reported in the account book of the plaintiff.

O. B. Smith testified that he was a brick-layer: had had accounts with the plaintiff and settled with him on bills which he produced, and never saw the account book now produced : found the bills presented by the plaintiff correct.

Joseph Granger testified that he was a mason: had dealt with Mr. Evans several thousand dollars worth: had settled with him on bills produced by him, and found the amounts correct: found him to keep correct accounts.

Warren Reed testified that he worked for plaintiff in 1853 hauling brick from his yard to defendants, on the lines of sewers which they were building in Detroit: hauled rom June or July to September or October. A small pass book was produced by the plaintiff, which the witness testifies he got at Jackson's request: the writing in it with ink is the hand-writing of Evans ; that in pencil of Jackson: witness cannot state from his own recollection how many brick he delivered : Jackson in making the entries

had to take the statement of witness as to how many there were in each load.

Theron Evans testified that he knew the plaintiff delivered sewer brick to the defendants in 1853, from July to October or November: witness had a pass book (which he produced) in which defendants put down part of the brick delivered: witness cannot tell or guess what number of brick he delivered: for the number entered in the pass-book the defendants had to take his word.'

Another small pass-book was here produced by the plaintiff, making three in all, in which defendant Jackson made entries of the number delivered, as reported to him by the teamster. These pass-books contained entries of only a small part of the brick for which pay was claimed by the plaintiff in this suit.

The plaintiff thereupon, without further testimony, offered to read the said account book to the jury, for the purpose of proving the number of brick delivered. On inspection of the book, it appeared to be kept in leger form, and contained several pages of charges of brick delivered to defendants in the summer and fall of 1853, which were scattered through the book with accounts against other persons, a page being generally devoted to each person's account. Many pages were filled up with charges, and many were not. The charges against the defendants were for loads of brick, each charge being for one, two, three or four loads, as the case might be. Against each charge, was the name of the teamster by whom the bricks were hauled and delivered. Several of these teamsters were not called, nor their absence accounted for, by the plaintiff.

The defendant objected to the book being read in evidence, for the following reasons:

1. The persons whose names appear opposite the charges have not been called.

2. The memoranda kept by Theodore Evans have not been produced or sufficiently accounted for.

3. There is no evidence that the brick tallied and counted by Theodore Evans were actually delivered.

4. The necessary preliminary proofs have not been introduced.

5. The book is not competent evidence under any circumstances.

6. The plaintiff having the right to call the defendant, must do so, or account for his absence before he can resort to the account book, which at best is but secondary evidence.

On these objections being stated, the plaintiff offered the following additional testimony, which was received under objection:

Joseph Granger testified that he should think it would not be possible for a teamster, hauling three or four loads of brick a day, to testify from recollection what quantity of brick he delivered.

Warren Reed testified that he was an old teamster, and had a pretty good memory; and that it would be impossible for him, hauling three or four loads of brick a day, to testify from recollection what quantity of brick he delivered.

The plaintiff then again offered said account book in evidence, and the court admitted the same — the defendant still objecting—and the jury rendered a verdict for plaintiff for the value of the brick charged for therein.

*L. Bishop*, for plaintiff in error.

*Emmons & Jones*, for defendant in error.

WING J.:

One of the errors alleged is, that the defendant's account book in which the entries were made by himself, were received in evidence. It is objected that the admission of this evidence is not authorized by the common law, nor by the statutes of this state.

JACKSON v. EVANS.

This species of evidence is received in almost every court of the United States, under what Mr. Greenleaf calls the American rule. It is said the principles of the rule were introduced into this country from Holland, by the first settlers of New England, and that the rule itself is supposed to be founded upon a kind of moral necessity. It now forms a part of what may be called the American common law.

From the earliest settlement of this state, we have recognized the New York rule as expounded and established in *Vosburgh v. Thayer*, 12 *Johns.* 461. And now after it has existed with us, as a rule of evidence, upwards of thirty years, we do not feel competent to discard it, and return to the common law rule, even if a change was desirable. With the expediency of the rule we have nothing to do: we take it as we find it, and have no apologies to make for it.

According to this rule, the books of account of the party can not be admitted, unless a foundation is first laid by proving that the party had no clerk, that some of the articles charged have been delivered, that the books produced are the account books of the party; and he must prove by those who have dealt and settled accounts with him, that he keeps fair and honest accounts.

The witness, Theodore Evans, testified that the books produced were the account books of the defendant. It is not directly proved that the defendant kept no clerk; but the nature of the business and the mode in which it was conducted, as described by the witness, establishes the fact that he kept no clerk. The witness says it was his business to tally the brick when hauled away by the teams; that he counted and tallied all the brick that were loaded, and kept an account of them on a tally book or slate (which he did not preserve), and on the evening of the same day (usually) or the next day, he reported the number to the defendant, who entered it in his ac-

count book. This witness made no entries or charges in the books. We think this case is brought within the scope of the decision in the case of *Sickles v. Mather*, 20 *Wend.* 72. In that case the witness testified that he had long been in the employment of the plaintiff as foreman in his factory, and had delivered all the brick the plaintiff had sold, and made memoranda of his sales on a slate which he kept at the factory during the day, from which plaintiff made entries in his book in the evening or the next day. The court held that the foreman was not in any sense a clerk for the purpose of verifying the books. A clerk could connect them with the sales, and his original entries (to the general accuracy of which he could make oath) became themselves evidence of what he may have forgotten.

It is further objected that the tally book and slate kept by Theodore Evans were not produced : that the evidence shows Theodore Evans kept a tally-book, and this should have been produced. But we think there is nothing in this objection. No inference can be reasonably drawn from the evidence of this witness that the tally book is in the possession of either the witness or defendant, or that it was preserved. The witness says he kept his memoranda on a tally-book or slate, which he did not preserve; they are both classed together as if alike destroyed.

The objection also assumes that the entries in the books produced were not the original entries. It is claimed that the memoranda on the tally-book or slate kept by Theodore Evans, were the original entries, so far as they extended. But these temporary memoranda were made preparatory to permanent evidence : they are not regarded as original entries. Charges made in books, as these were, in the regular course of business, at or near the time of the transaction, are considered to be original entries: *Sickles v. Mather*, 20 *Wend.* 72; 1 *Smith's Lead. Cas.* 232,

235; 1 *Greenl. Ev.* § 117, *note*; 12 *Pick.* 139; 13 *Mass.* 427; *Cow. & Hill's Notes*, 682 ; *Kelley's R.* 232.

It is alleged as error that the evidence of Granger and Reed was received. The bill of exceptions shows, that in charging the brick the names of the teamsters who hauled them were set opposite the charges. Only a part of the teamsters were called by defendant as witnesses, and it was objected the books should not be received in evidence until all who delivered brick were sworn, or their absence accounted for.

It was assumed that, if called, they could not remember the number of brick delivered by them respectively, and to establish this fact, or make it probable, witnesses were called, and testified in substance, that it would not be possible for a teamster, hauling three or four loads of brick a day, to testify from recollection what quantity of brick he delivered. To this ruling of the court admitting this evidence, and also admitting the books in evidence without calling the other teamsters, who delivered a large portion of the brick, plaintiff in error excepted.

The evidence of Granger and Reed, as given, was improperly received. They were not called as experts, and if they were they could not be received to give evidence as experts on such a subject: — 1 *Greenl. Ev.* § 440. Upon the other point we have found but two cases which sustain the ruling of the court: — In *Curren v. Crawford*, 4 *S. & R.* 6, the plaintiff owned a lime kiln, and had sold lime to the defendant; he produced his account books in evidence, in which the charges were made by himself, and in part from memoranda furnished to him by his teamster; he testified he was present when some of the wagons were loaded with lime for defendant, but he was not always present when the wagons were loaded; the lime he did not see loaded he generally saw delivered. It was objected that the teamster was the best evidence of the delivery of the lime. The court held that it was not necessary to fortify

the books by the oath of the teamster, and the books were admitted. In *Jones v. Long,* 3 *Watts,* 326, the plaintiff offered his books in evidence, and stated on his *voir dire* that he dug coal for the defendant, which was hauled by the servant of the defendant, who rendered to him an account every day of the loads hauled, which were entered by him in his book. It was objected as in this case, that the teamster should be called, as the best evidence. But the court held it was not necessary. They say " the books were not evidence *per se:* all that can be said is, that the weight of evidence furnished may be diminished before the jury by the non-production of the wagoner. It is not probable that the wagoner, after a lapse of time, would have thrown any light upon the quantity transferred daily: the same objection was made and overruled in *Curren v. Crawford."* The same court in *Koughley v. Brewer,* 16 *S. & R.,* in remarking upon the case of *Curren v. Crawford,* say "It has long been settled to receive books of original entries: in that case the court went one step farther, and received entries of lime sent from a kiln, and these entries must have been made several hours before the lime was delivered, and without any absolute certainty that the lime would be delivered; but it was necessary to receive such evidence or impose difficulties on the business which would be great to the seller, and materially increase the price to the buyer."

These are the only cases we have found in which the delivery of the property was made by an agent, and entered by the principal, and the books were received in evidence without calling the agent as a witness. They are in conflict with *Kessler v. McConachy,* 1 *Rawle,* 441; *Smith v. Lane,* 12 *S. & R.* 80, and many other decisions in the same state collected in *Cowen & Hill's Notes,* 694. The courts of other states appear not to have allowed so great a latitude in evidence.

In *Ingraham v. Bockius,* 9 *S. & R.* 285; *Koughley v. Brewer,* 16 *S. & R.*; *Kessler v. McConachy,* 1 *Rawle* 441; *Mor-*

*ris v. Bridge*, 3 *Cush.* 343; *Smith v. Sanford*, 12 *Pick.* 139; *Faxon v. Hollis*, 13 *Mass.* 427; *Smith v. Lane*, 12 *S. & R.* 80, and *Sickles v. Mather*, 20 *Wend.* 72, the goods were delivered by foremen or servants, and entries were made in the books of the principal from their memoranda, but the agents or servants were called to prove the delivery, and it would seem that upon principle this should be required. The common law regards the entries of parties in their own books as less than secondary evidence; as hearsay evidence of their own fabrication; and they are not regarded by our courts as primary evidence. They are not received as satisfactory proof of charges, but only as proof of things which, from their nature, are not susceptible of higher proof. There is no warrant for this court to go beyond the necessity upon which the practice is founded. The books are introduced for the purpose of proving the delivery of the articles, or the service performed. In the states (except Pennsylvania) where the suppletory oath of the party is received, he must swear that the articles were delivered by himself, or that he knew of their delivery, and that he made the entries. It is obvious that where he can not do this, he can not give evidence in support of his books, and consequently they can not be received; and in our state, where the party is not permitted to swear to his charges, where it is apparent that the delivery of the articles was not made by himself, but by a third person, he should be called to prove it, or the result should be the same, unless it is made to appear that his testimony can not be had. The fact that it may be highly improbable that the person who may have delivered the property would remember the quantity, would furnish no sufficient reason why he should not be called. The main fact to be ascertained or proved, is, that the articles have been delivered. It is only upon failure to prove the delivery of the articles by the agent when called, that the books are received, as the next best evidence. This was apparently the only rea-

son for the admission of the books in the cases last cited. The witnesses in those cases proved the delivery of the articles. charged, but could not prove the quantity or number, and therefore the books were received. If the witnesses could have proved both the delivery and the quantity or number of the articles, there could have been no good reason for the reception of the books.

In this case we can indulge in no presumption which can dispense with the teamsters, or some one acquainted with the same facts, as witnesses. They were engaged in delivering brick to the plaintiff four or five months; the defendant knows their names, for he has them on his books; and if they could not remember how many they delivered, they can not but remember that they delivered to the plaintiff all the brick that were loaded and counted for that purpose, and which were tallied by Evans. This would be a very important link in the chain of circumstances, to prove a sale and delivery of the articles charged. The teamsters can prove the delivery. Evans proves the number loaded and hauled away, and that he reported them to the defendant, who entered them in his books: this makes up the *res gestæ*. To dispense with this evidence would be to set at naught a very valuable rule of the common law. This class of evidence is so slight at best, that no extension of the rule beyond the apparent necessity of the case should be allowed. Judge Harris in remarking upon this class of evidence in *Larue v. Rowland*, 7 *Barb.* 107, says " the account books of a party are received in evidence only upon the presumption that no other proof exists. They are regarded as the weakest and most suspicious kind of evidence, and that too of the lowest grade, and should always be received with extreme caution." In speaking of the suppletory oath which is required of the party in some of the states, he says he concurs with Judge Cowen in believing that, frail as such proof must be, the law can hardly be censured for think-

ing it would be but little fortified by the suppletory oath of an interested and excited party."

It is alleged that the books of account of the defend ant were received in evidence without his proving that he kept honest and fair accounts. The witnesses to this point were O. B. Smith and Joseph Granger. They both swear they had accounts with the defendant, and had settled with him on bills produced. The first says he never saw the books produced in court, but he found the bills presented correct. The latter witness says he "found the amounts of the bills correct — found him to keep 'correct books." It is obvious witness had no other knowledge on this point besides what he gained from the bills. We have examined the reports of New York and New Jersey (where our rule prevails) with a view to ascertain the course of decisions upon this point.

It is very evident, we think, from the cases in the New York reports, that the practice in that state has been to require proof of settlements by the books of the party, and that he keeps honest and fair accounts. We can not find any case in which this has been directly decided, but in nearly all of the cases in which this kind of evidence was received, it appears to have been proved that the witness knew the parties books, and had settled by them. This appeared in the leading case of *Vosburgh v. Thayer.* It was proved in *Linnell v. Foot,* 11 *Wend.* 569, that the witnesses "had dealt with the plaintiff, and that he kept fair and honest books." In *Sickles v. Mather,* 20 *Wend.* 72, the witnesses "had dealt extensively with the plaintiff, and had settled accounts with him, which they always found to be correct, and that he kept honest and fair books." In *Larue v. Rowland,* 7 *Barb.* 107, the witnesses testify that they "had dealt with the plaintiff, and settled with him from his books, and found their accounts upon his books all right." In *Beattie v. Qua,* 15 *Barb.* 133, the witnesses had "dealt with the plaintiff, and had settled with him; and they swore he kept honest books of

account." In *McAllister v. Reab*, 4 *Wend.* 483, the clerk
of the plaintiff testified that he had been present at seve-
ral settlements, with different persons, and never heard any
complaint of the correctness of plaintiffs books. These are
all the cases we have found in which the evidence is
stated. The great uniformity that is shown to exist in all
of them upon this subject, shows clearly, we think, the
understanding of the profession in that state to be that
settlements by the books are to be proved, for the pur-
pose of giving character to the books, and identifying them,
instead of directing the proof to the character of the party
whose books they are. The character of the party for
integrity and fairness is not in question except so far as
his books are concerned, and as it is the object to ascertain
the general fairness and correctness of the books which
are offered, it would seem that the proof should be con-
nected with and point to them.

We have found a case reported in *Kelley*, 232, in which
a lumber account was kept on a sheet or a part of a sheet
of paper, which was appended to the writ, and which the
plaintiff swore were his original entries kept by himself: they
were received in evidence as such — proof being introduced
showing the plaintiff was in the habit of keeping correct ac-
counts. Witnesses were called, who proved that they had
settled with him on presentation of their accounts, and they
found them to be correct. In this case, the entries were
made in part from memoranda on slates reported to the
plaintiff. The witnesses settled by the plaintiff's bills. If
any inference can be drawn from the case as to the char-
acter of the bills presented, it is, that these bills, as well as
that attached to the writ, were the original entries also on
sheets. The party had no books, otherwise the sheet at-
tached to the writ would not have been admitted. We can
not perceive how the evidence received in this case tends
to establish the honesty or fairness of the books. It was
not shown that the bills were transcribed from the books

in question. Theodore Evans swore that the books were defendant's books of account in which he charged brick delivered by him, and from which he made out his bills. If it can be claimed that this clearly conveys the idea that the witness knew defendant made out his bills from this book, it does not show that the bills which were settled by the witnesses were transcribed from them, or from any book or account kept by defendant; for it was not shown that these books contained any accounts against those witnesses, and therefore we can not perceive how the evidence tended to support the books, or to lay a foundation for their reception by the court.

In addition to these views, we state our conviction that it has been the practice in this state for very many years, and as long as books of account have been received in evidence, to require evidence of the correctness and fairness of the books offered, founded on information gained by an actual inspection of and settlement by them. We see no good cause (if we have the power) to change a practice which. is so well settled, and has prevailed so long amongst us.

*Judgment reversed.*

Present and concurring PRATT P. J., GREEN, JOHNSON, MARTIN, COPELAND and BACON JJ. DOUGLASS J. did not participate, having decided the cause in the court below.