BRYAR *against* WILLCOCK".

ASSUMPSIT, on a promissory note, *Payee* v. *Maker.* Plea, *non assumpsit, et non accrevit infra sex annos.*

On the trial, at the *April* sittings in *N. York*, (1822) before Mr. Justice WOODWORTH, the plaintiff gave in evidence the note, dated *February 6th*, 1812, for $772,04, payable 4 months after date ; and proved that the *cap. ad resp.* was issued *December 2d*, 1819, and served on the same day.

Then, to take the note without the operation of the statute of limitations, the plaintiff produced the petition and proceedings of the defendant, under the "act for giving relief in cases of insolvency," passed *April* 12, 1813, (1 *R. L.* 460.) including a sworn inventory of the debt due upon the note at $853.25, principal and interest.

The plaintiff then gave credit for $134,79, received *August 19th*, 1817, and rested.

The defendant's counsel moved for a nonsuit, on the ground that no promise had been proved within 6 years before the suit was commenced ; but the Judge denied the motion.

The defendant then offered in evidence his discharge under the above act, the reading of which was objected to by the plaintiff's counsel, on the ground that it was under an act passed after the note was given; but the Judge overruled the objection, and the discharge was read in evidence.

This was followed by proof that the above sum of $134,79 was received by the plaintiff of the defendant's assignee, as a dividend under the insolvent act.

Other evidence was given in the cause, by the plaintiff, which is not deemed material to the questions raised by counsel and determined by the Court.

Verdict for the plaintiff for $1221,38, subject to the opinion of the Supreme Court upon a case, with leave to either party to turn it into a bill of exceptions or special verdict.

An inventory and affidavit of a debt made by an insolvent before a commissioner, in order to obtain his discharge (which is granted) under the insolvent act, is a sufficient acknowledgment to take the debt out of the statute of limitations.

An action on a note given *February 6th*, 1812, just before the repeal of the insolvent act of 1811, which was repealed *February* 14, 1812, is barred by a discharge under the insolvent act of *April* 12, 1813.

*T. A. Emmet,* for the plaintiff. To shew that the defendant's inventory and oath took the case out of the statute of limitations, he cited *Smith* v. *Ludlow,* (6 *John. Rep.* 267, 269,) *Bryan* v. *Horseman,* (4 *East,* 599,) *Rucker* v. *Hanny,* (*id.* 604, *note(a)* *Truman* v. *Fenton,* (*Cowp.* 548, *per Ld. Mansfield,*) *Johnson* v. *Beardsley,* (15 *John.* 3,) *King* v. *Riddle,* (7 *Cranch,* 168,) which last case he said was in point, as well as the case af *Mountstephen* v. *Brooke,* (3 *B. & A.* 141.)

That the receipt of the dividend could not operate as an accord and satisfaction, he cited what the Court said in *Johnson* v. *Brannan,* (5 *John. Rep.* 271, ) *and Watkinson* v. *Inglesby,* (*id.* 386.) *Fitch* v. *Sutton,* (5 *East,* 230.) *Peyton's case,* (9 *Rep.* 79 *b.*)

That the insolvent discharge was inoperative, he relied on *Roosevelt* v. *Cebra,* (17 *John.* 108.)

*J. Anthon & J. O. Hoffman,* for the defendant, said, the main question arises upon the insolvent discharge. The " act for the benefit of insolvent debtors and their creditors," (*sess.* 34, *ch.* 123) of *April* 3, 1811, was in force at the date of the note. This act authorized the defendant to apply for and obtain a discharge of equal efficacy with the one under consideration, on his own petition merely ; and according to the doctrine laid down in *Mather* v. *Bush,* 16 *John.* 233,) the statute of 1811 was a part of the contract. The qualification of the defendant's promise was, then, that he should pay the debt unless he should become insolvent, and be duly discharged upon a surrender of his property for the benefit of his creditors. Then came the act of *April* 12, 1813, by which a new condition was imposed, the assent of creditors, ⅔ in amount. The defendant complied with this added condition, and was discharged. Now the single question is, whether such a law can be said to impair the obligation of the original contract; and surely this cannot be pretended. The demand of the plaintiff was rather fortified by this farther condition. The case of *Wendell,* (19 *John.* 153) in effect, disposes of this question. It was there held that a contract made in *October,* 1812, being after the repeal of

the act of 1811 ; and, therefore, in reference to the act of the 3d *April*, 1801, (1 *K. & R.* 428) was not discharged by the act of the 12*th April*, 1813 ; and this upon the express ground that when the contract was made the ¾ act was in force ; and the ⅔ act narrowed the rights of the creditor and impaired his contract. The converse of the proposition follows, in this case, throughout, and we ask the corresponding conclusion. This Court have repeatedly declared that they will not go beyond the spirit of the United States' decisions, which are founded upon the idea of impairing contracts.

Again ; the plaintiff is concluded by receiving the dividend. He has himself taken the benefit of the statute by a very deliberate act. Notice is given ; he proves his debt and is paid. This is an acquiescence in the proceedings by which the creditor should be concluded. He stands in the light of an ordinary petitioning creditor. The only difference is, that the plaintiff consented *after* the discharge ; whereas the petitioning creditor does the same thing *before*. This case is certainly much stronger than that of *Field* v. *Howland*, (17 *John.* 85.) The plaintiff's acts of acquiesence are much less equivocal here than in that case. The ground of a discharge under the English bankrupt law, is similar to that which we take here. The receiving a dividend, and signing a certificate, are deemed an election of the creditor by which he is concluded. (*Ex parte Freeman*, 4 *Ves.* 836. *Grosvenor, Ex parte*, 14 *Ves.* 587.) After the creditor has proved his debt and received a dividend, he is never permitted to proceed, until he first refunds what he has received ; (1 *Cooke's B. L.* 127, *and the cases there cited ;*) not a case can be found to the contrary : and it is a fatal objection to this action, that the plaintiff has not refunded.

The statute of limitations has been so nearly explained away, that Courts feel a disinclination to multiply exceptions to it beyond what has been done already. (*Clementson* v. *Williams*, 8 *Cranch*, 72.) It is now well settled by the decisions of this Court, that the admission of

what will constitute a debt, but at the same time claiming a discharge from it, will not prevent its being barred. (*Sands* v. *Gelston*, 15 *John.* 511.) The admission insisted on here, depends upon the same principle. It was for the purpose of obtaining a discharge.

*Emmet*, in reply. The objection that the dividend should be refunded, was not made at the trial ; and it is, therefore, too late to raise that point here. But the English doctrine relied upon does not apply. It is for the benefit of the creditor, who may, by the act of refunding, avoid the discharge, and proceed at law ; but will not be permitted to do this till he places every thing *in statu quo*. Accordingly, if he elect to withhold his sanction to the proceedings under the commission, he must refund his dividend for the benefit of the other creditors. His remedy depends upon his own choice. The law there has full power to discharge ; and the doctrine goes upon that ground. With us, the discharge does not affect the contract. The election which the plaintiff sets up against us as conclusive, is merely an election to give the discharge its true operation, which does not affect the contract beyond the amount of the dividend. *Sturges* v. *Crowninshield*, (4 *Wheat.* 122,) gives us a right to proceed against the property acquired after the assignment, for the balance beyond the dividend ; though it protects the person of the debtor ; a case very different from the English bankrupt discharge, whose clear operation is to take away all liability, both from property and person. We are bound so far as the law is valid ; but no farther. The case of *Field* v. *Howland*, does not apply. All the Court say in that case is, that where they would have granted a dis continuance at a previous stage of the action, they will stay execution perpetually, if the application to discontinue is delayed and lost by suffering final judgment. The appeal comes, in such a case, to the equitable powers of the Court. The doctrine of election was not, perhaps, sufficiently considered in that case ; for, surely, nothing is plainer than that election should never bind any farther than the statute can legally operate ; and the withdrawing all opposi-

tion to the discharge in that case was, in law, and, probably, in fact, merely saying, " I will suffer the law to take its course, and discharge the person." It could operate in that way only ; and why should an abandonment of opposition, and even the receiving a dividend, or taking that which the creditor cannot have in any other way, bind him to all intents ?

As to the question whether the discharge affects the contract, what are the circumstances ? The note was given *February*, 6, 1812. It may more properly be said to have been made in reference to the law which had then probably passed both houses of the legislature ; and was merely awaiting the sanction of the council of revision, the act of *February* 14*th*, 1812, which finally passed only 8 days after the date of the note, repealing the act of 1811, and leaving the contract to the operation of the act of 1801. Yet we are told that the law of 1811, interweaves itself in the contract. This should be qualified with the provision that the law continues. Taking the reasoning of the other party, without this qualification, the defendant may say, " I will still have the benefit of the act of 1811, though repealed. It was a part of my contract ; and the repeal impairs the obligation of the contract on my side, and for my benefit." But this will not be contended. The act of 1811 is put out of the way by the repeal. It is as if it had never been ; and the note stood subject to be discharged by the $\frac{3}{4}$ act only. Then the act of 1813 attempts to impair the contract by granting greater facilities of discharge. If the act of 1813 had repealed the act of 1811, so that the one system had passed smoothly and unbroken into the other, there might be plausibility in the opposite argument.

[WOODWORTH, J. The length you go would make it out that the *new* insolvent act, though it recognize the principle of the old one existing at the time of the contract, and narrow the facility of discharge, would be inoperative, because a *new* and *distinct* act.]

*Emmet.* Certainly. Upon any other principle, the debtor could never be deprived of the benefit of the insolvent law, as it existed at the time of the contract.

*Curia, per* SAVAGE, Ch. J. (after stating the case.) The first question is, whether the inventory and affidavit of the defendant is a sufficient acknowledgment to take the debt out of the statute of limitations. It is certainly an admission that the note was due and unpaid, and that will authorize us to presume a promise, unless the acknowledgment is accompanied with expressions which negative that idea. (*Sands* v. *Gelston,* 15 *John.* 511.)

2. Was the defendant's discharge a bar ? The note was given before the repeal of the act of 1811.; and,.according to the decision of this Court, in *Mather* v. *Bush,* (16 *John.* 246, 251,) the contract between the parties was, that the note should be paid, unless the defendant became an insolvent debtor within the meaning of the act of 1811, and was duly discharged from his debts according to its provisions. By that act, he was entitled to his discharge on his own petition, and on surrendering his property for the benefit of his creditors. By the repeal of the law of 1811, which took place a few days after the date of the note, the law of 1801 was revived, which requires the assent of $\frac{3}{4}$ of the creditors of the insolvent, before he can be discharged. The repeal of the law, therefore, was favourable to the plaintiff. The act of 1813, materially varied the principle of the law of 1801, in as much as it removed some of the difficulties in the way of obtaining a discharge by substituting the assent of $\frac{2}{3}$ instead of $\frac{3}{4}$ of the creditors.

It cannot be denied, that according to the decisions of this Court, a discharge under the act of 1811, which did not require the assent of any one creditor of the defendant, would, had that act continued in force, have discharged the defendant from the payment of the note in question. Had the law of 1811 been immediately followed by that of 1813, the provisions of which are so much more unfavourable for the defendant, the validity of the discharge would not be disputed ; for it is distinctly admitted by the reasoning of

UTICA,
Aug. 1824.

Bryar
v.
Wilcocks.

the Court, in the matter of *Wendell*, (19 *John.* 153,) that had the provisions of 1801 been continued in force, the law of 1813 would have been valid as to contracts entered into under the law of 1801, notwithstanding any revision or re-enactment of those provisions. Does, then, the fact that the law of 1801 was in force for about one year after the date of the note, alter the rights of the parties? The act of 1801 was not in the contemplation of the parties when they entered into this contract. It is true, that while that act was in force, the defendant could not have obtained his discharge without the assent of $\frac{3}{4}$ of his creditors. But had the legislature, on the 12*th April*, 1813, re-enacted the act of 1811, instead of the $\frac{2}{3}$ act, would not a discharge under the former be valid, as being the precise terms on which it was originally agreed, that the defendant should be absolved from his contract? Most certainly. If, then, the defendant has done all which his contract required, to absolve him from it, and something more, shall the additional difficulties, the assent of $\frac{2}{3}$ of his crediors, imposed on him by the act of 1813, operate to his prejudice, and invalidate a discharge which, without such assent, would have been valid between these parties? I think not; and am, accordingly, of opinion, that the defendant is entitled to judgment.

Judgment for the defendant.