**Case No. 4,331.**

In re ELDRIDGE et al.

[2 Hughes, 256; 12 N. B. R. 540; 1 N. Y. Wkly. Dig. 243.] [1]

District Court, E. D. Virginia. 1875.

---

[1] [Reported by Hon. Robert W. Hughes, District Judge. and here reprinted by permission. 1 N. Y. Wkly. Dig. 243, contains only a partial report.]

HUGHES, District Judge. It cannot now be doubted that the federal courts are bound to pay the same regard to the statutes of states limiting the time within which actions may be brought, as is paid them by the state courts. [Shelby v. Guy] 11 Wheat. [24 U. S.] 361; [M'Clung v. Silliman] 3 Pet. [28 U. S.] 270; [Green v. Neal] .6 Pet. [31 U. S.] 291; [Ross v. Duval] 13 Pet. [38 U. S.] 45; [U. S. v. Wiley] 11 Wall. [78 U. S.] 513; [Levy v. Stewart] Id. 249; [Stewart v. Kahn] Id. 493; [Hanger v. Abbott] 6 Wall. [73 U. S.] 532; and also 1 Stat. 92, § 34.

It is equally well settled that courts of bankruptcy, like courts of equity, recognize statutes of limitations. 15 Ves. 478; 19 Ves. 468; 2 Rose, 59; 2 Glyn & J. 46; 1 Bing. 324; 8 Moore, 190; 7 Ir. Ch. 284; 3 Deac. 294; 34 U. S. Law J. 44; Kidd, 7 U. S. Law J. 613.

The only question, therefore, is, what is the limitation in Virginia, and whether the act ceases to run at the date of adjudication, or of the proof of the claim of Hawes & Co.

In Virginia, the statute of limitations did not run from July 26th, 1861, until the 1st of January, 1869. Beginning to run at the latter date, if the adjudication in bankruptcy stops the running, then this claim of Hawes & Co. is not barred; whereas, if the statute

runs until the proving of the debt, then this claim is barred, there having elapsed more than five years between the 1st of January, 1869, and the 6th of March, 1875.

Authorities were cited at bar—Bump, Bankr. 566, 543, 8th Ed.; In re Cornwall [Case No. 3,250]—deciding that the proof of a claim is the beginning of a creditor's suit against an assignee, and, therefore, stops the running of the statute. The weight of authority, however, is greatly in favor of the proposition that the petition in bankruptcy is the act which stops the running of the statute, it being a new promise, and the creation of a trust. As the question is one of importance, I will give the authorities on the subject.

That the statute of limitations did not run during the late war was decided by the supreme court of the United States in [Hanger v. Abbott] 6 Wall. [73 U. S.] 532; [Freeborn v. The Protector] 9 Wall. [76 U. S.] 687; and [U. S. v. Wiley] 11 Wall. [78 U. S.] 508 and 509.

In Virginia, a stay law was enacted July 26th, 1861, in which it was provided: "Nor shall the time during which this act is in force be computed in any case in which the statute of limitations may come in question." This act was renewed and extended, each time with this same provision, by the following acts, viz., that of February 10th, 1862; that of December 20th, 1862; that of January 30th, 1863; that of January 12th, 1864; that of January 23d, 1865; that of March 2d, 1866; and by Acts 1866–1867, c. 297, it was extended to January 1st, 1869.

The act of March 2, 1866, c. 69, § 7, provides that: "The period during which this act shall remain in force shall be excluded from the computation of the time within which, by the operation of any statute or rule of law, it may be necessary to commence any proceedings to preserve, or prevent the loss of, any right or remedy."

I believe it is a fact that there was no time during which the statute was running from July 26th, 1861, until January 2d, 1869. From that time to the petition in bankruptcy in this case was a period of less than five years.

"All debts due and payable from the bankrupt at the time of the adjudication in bankruptcy, may be proved." Section 19, Bankr. Act.

"The statute of limitations does not run against a claim after commencement of the proceedings so as to prevent its proof, if it was not barred at the time the proceedings were commenced; but the claim may be proved after it would otherwise have been discharged." Avery & H. Bankr. 147; 48 Mass. [7 Metc.] 348; Ex parte Ross, 2 Glyn & J. 46, 330.

"It seems that including a demand in the schedule of an insolvent's debts is evidence of a new promise, if within the period of limitation." Bowie v. Henderson, 6 Wheat. [19 U. S.] 514. In this case, although it was held that the assignee, under the peculiar assignment which was under consideration, was not a trustee, and that recording the debt did not change its nature as to make it a debt of record, yet the court say, "The effect of recording this debt was merely an admission of its existence, and not a change of its nature. It would have been sufficient evidence, if five years had not elapsed after recording, to have sustained an issue, on a replication of a new promise, to the plea of the statute of limitations. But more than five years having elapsed, it could have no application in this case."

See, also, 3 Cow. 159, and 2 W. Bl. 702. In this last case the court say, "No objection can arise if the debt is not barred at the time the act of bankruptcy was committed."

A proceeding in bankruptcy is in the nature of a suit in which the bankrupt is plaintiff and all his creditors are defendants. Bump. Bankr. (8th Ed.) p. 374. Debts may be proven at any time. Id. 77.

The meaning of the phrase sometimes used, that when the statute of limitations commences to run it never stops, notwithstanding disabilities of the parties, means where the disability applies to the plaintiff. That is, if the plaintiff, once being free from disability, afterwards becomes disabled, as by marriage, death, bankruptcy, etc., it does not stop the running of the statute. A slight consideration will show that any other meaning is impossible.

The effect of going into bankruptcy is to promise to pay to all creditors pro rata to the extent of the assets, and to devote all assets to that purpose, in consideration of a discharge from further payment. This applies to all debts "due and payable" at the time. Minot v. Thacher, 48 Mass. [7 Metc.] 348. Syllabus: "The statute of limitations does not run against a claim upon an insolvent debtor after the publication of the messenger's notice of the issuing of a warrant against the debtor, under St. 1838, c. 163. A claim not barred by that statute, when such publication is made, may be proved at a meeting of the creditors held after it would otherwise have been barred."

The court say (Dewey, J.): "The first objection to the allowance of the claims of the appellees is, that the same were barred by the statute of limitations. The position assumed by the assignees is, that though six years had not elapsed since the cause of action accrued, computing the time with reference to the publication of the proceedings in insolvency, and the appointment of the messenger to take possession of the effects of the insolvent, yet, as it had elapsed before the time of the meeting of the creditors at which the demands were presented, it is a good statute bar to these demands. It seems necessary only to state the proposition to show that it cannot be sustained. By force and effect of the appointment of a messenger, and the

publication thereof conformably to the statute, the property of the insolvent debtor is sequestered for the benefit of all the then existing creditors. After such publication, a suit by the creditor would be of no avail, as the property is all transferred to the assignee, and the body of the debtor is to be discharged from arrest on execution. The debts presented for allowance against the insolvent are to be considered with reference to their validity at the date of the publication by the messenger. If they are found to be barred by the statute of limitations at that period, it would of course be competent for the assignees to object to their allowance, but not to compute the six years with reference to the time of the meeting of the creditors. A different rule would work manifest injustice. Take the case of a creditor who has a debt that would be barred in thirty days. He knows that by law he has until the last of these thirty days to institute his suit, and intends so to do; but in this state of things the debtor, upon his voluntary application, goes into insolvency under St. 1838, c. 163; the incipient proceedings are all regularly taken, but no meeting of the creditors is held for proving their debts, until thirty days have elapsed. Is the debt of this creditor to be regarded as barred by the statute of limitations? Clearly not. But the principle contended for by the assignees would lead to that result in the case supposed."

This case also holds that, although the insolvent had, prior to proof, obtained his discharge, it makes no difference: "Prior to these proceedings in bankruptcy the debtor, by his voluntary application as an insolvent, had caused all his property to be sequestered for the payment of his debts pro rata, and these creditors, by virtue of those proceedings, had acquired a right to claim their proportional dividend to be paid from the assets of the debtor in the hands of his assignees on filing and proving their debts according to the provisions of the statute." The same case holds that claims may be proved at any meeting of creditors, which is also permissible under the present national law of bankruptcy.

In Ex parte Ross, 2 Glyn & J. 46, the syllabus is: "After a commission issued, the statute of limitations does not run against a creditor of the bankrupt." In this case the notes were dated May 21st, 1810, payable three and four months from date. Commission issued July 10th, 1810. Application to prove in December, 1824. Sole ground of defence, six years had elapsed. The vice-chancellor said that "after a commission issued, the statute of limitation did not run against a creditor; that the commission was a trust for the benefit of all the creditors, and it was a known principle that the statute did not run against a trust, and it was ordered that it be referred back to the commissioners to receive the said proof in respect

to the said two promissory notes, having regard to the said declaration, and that the petitioners do tender their proof accordingly."

On appeal to the lord chancellor (Id. p. 330), this was sustained, and he said: "Whatever may be the technical objection, the effect of the commission clearly is to vest the property in the assignees for the benefit of the creditors; they are, therefore, in fact, trustees, and it is an admitted rule that unless debts are already barred by the statute of limitations when the trust is created, they are not afterwards affected by the lapse of time. . . . I think the decision of the vice-chancellor was right."

In Richardson v. Thomas, 79 Mass. [13 Gray], 381, the debtor had gone into insolvency, but never obtained a discharge. Action brought at law afterwards. Held, that putting the debt in the schedule and payment by the assignee of part did not revive the debt; and in such case the pendency of proceedings did not suspend the operation of the statute, because he might still have sued, etc. The court say: "Nor do any of the authorities cited have a contrary bearing. They tend to prove that the statute of limitations does not run against the right of the creditor to prove his debt against the estate of the insolvent in competition with his other creditors, provided he had a good cause of action not barred by the six years' limitation at the time of the first publication of the insolvency. 48 Mass. [7 Metc.] 435. But it is a very different question whether the same statute is a bar to the creditor suing the debtor in a common law action upon the original cause of action. The reasons for this are obvious and are fully stated in the cases cited." 79 Mass. [13 Gray] 381; 73 Mass. [7 Gray] 274, 387,—are of same nature.

The case of Bowie v. Henderson, 6 Wheat. [19 U. S.] 514, is one relating to an act of congress which provided that where the debtor made a schedule of his assets and liabilities, recorded it in the clerk's office, and devoted the assets to the payment of his liabilities, he would be discharged from imprisonment. He was not discharged from his debts. After this was done it was sought to charge the debtor himself as a trustee for his creditors in respect to his future property. The court held that he was not such trustee; but it will readily be seen that it has no application to the principle of the bankrupt law, that the assignee as to property in his hands is trustee for the benefit of the creditors, entitled to have it applied to the payment of their debts.

In Collester v. Hailey, 72 Mass. [6 Gray] 517, Chief Justice Shaw said: "At the time of the first publication the assets of the insolvent were sequestered and placed in the custody of the law, in trust for those who were then creditors who then had provable debts. Of course, the further lapse of time could not defeat the right thus vested to

prove for a share equally with other creditors in this trust fund."

The general principles applicable to all bankrupt and insolvent laws are these: The filing of the petition and the including of a debt in the schedules by the debtor, is a new promise. The goods are sequestered. They are in the custody of the law. They are in trust. The statute of limitations which ran against the debt ceases to run against the trust, and the debt is not barred if the time of limitation had not expired at the commencement of the insolvency or bankrupt proceedings. This is a matter of course; the right of the creditor is vested in the trust fund. This would be the case even under a more general assignment to a trustee for the benefit of creditors. It is a general principle.

The decisions of Massachusetts do not profess to be based upon any special language or provision of the statute upon which they were rendered. They quote to sustain them the English cases, not because of any similarity between the statutes, in language or provisions, but because of the general principles upon which they rest. The English cases themselves are not based upon any special provisions of the English bankrupt act, but upon the general principle that the property of the bankrupt is set apart as a trust to be applied to the payment pro rata of the debts due and payable at the time of the bankruptcy.

The assignee is a trustee for the creditors. There is no adverse interest between them. Bump, Bankr. (8th Ed.) 545. It is not, therefore, proper to say that a proof of debt is a suit. It is a mere statutory proceeding to ascertain the amount due, the proceeding for the collection of the debt having already been commenced. "The proceeding in bankruptcy, from the filing of the petition to the discharge of the bankrupt, and the final dividend, is a single statutory case or proceeding." Bump, Bankr. 325. The proof of a debt is made before the register, and is uncontested. The assignee is not a party to it at all. There is no necessity of giving him any notice. Proving the claim has nothing of the character of a suit. Suits imply a controversy between parties; they are commenced by some sort of process; there must be adverse parties. But there is no adverse party to a proof of debt. It is, therefore, technically inaccurate to style the proofs of claims in a bankruptcy proceeding as a "group of suits."

I conclude this discussion with a quotation from Angell on Limitations (section 167), the standard work on this subject:

"The statute does not run against the creditor of the bankrupt, as a commission in bankruptcy constitutes a trust for all the creditors. This was held by the master of the rolls; and afterwards, on appeal, the decision was confirmed by the lord chancellor, who said that the effect of the commission was to vest the property in the assignee for the benefit of the creditors, and that he was therefore in fact a trustee, and that it was an admitted rule that unless debts are already barred by the statute of limitations when the trust is created, they are not afterwards affected by the lapse of time." See, also, 24 Pa. St. 482; 14 Serg. & R. 487; and Trecothick v. Austin [Case No. 14,164].

The proof of the claim of Hawes & Co. in this cause must therefore be allowed.