PETER B. ROSS, APPELLANT, *v.* PETER B. ROSS AND CORNELIUS P. ROSS, EXECUTORS, ETC., AND OTHERS, RESPONDENTS.

*Statute of limitations — mutual accounts — Code,* § 110 — *revival of old debt by new promise.*

Accounts are mutual where each party makes charges against the other.

Where an executor, in preparing an inventory of the estate, included therein a promissory note given by him to the testator, which note was then outlawed: *held*, that this was a sufficient acknowledgment in writing, within section 110 of the Code, to remove the bar of the statute of limitations.

Where an instrument has been executed between persons standing in the relations of parent and child, guardian and ward, physician and patient, or solicitor and client, it rests upon the party seeking to avail himself of the benefit thereof to show it to be fair and just, and that its execution was not procured by fraud or undue influence.

If, upon an appeal from a decree of the surrogate, one of the respondents wishes to raise any question between himself and any of the other respondents, he must himself appeal from the decree.

Rule 51 only allows a respondent to specify, in his answer, items as to which the decree is erroneous as against him and in favor of the appellant. It does not authorize a review of claims of the appellant against the estate, generally, which have been allowed, or of similar claims of the respondents which have been disallowed.

APPEAL from a decree of the surrogate of the county of New York, in the matter of the final accounting of the executors of William S. Ross, etc.

*L. S. Chatfield*, for the appellant.

*Charles H. Glover*, for the executors.

*N. A. Halbert*, for the respondents.

*Gideon J. Tucker*, for the respondent Mrs. Uglow.

*Walsh, Halbert & Eckerson*, for the respondents J. H. and E. M. Ross.

Brady, J.:

Peter B. Ross, who is the appellant, claims immunity from the payment of certain notes charged against him, on the proposition that the statute of limitations has applied. There are two answers to this.

First. It appears that there were mutual accounts between the testator and him, mutual dealings and reciprocal demands, extending certainly from April 1, 1863, to January 1, 1873. The notes were dated in the months of October and November, 1860, save one of them, which had no date. The account rendered by appellant is for rents collected from April, 1863, to December, 1872, and for services for which no dates are given. These were doubtless rendered during the period included between the several dates given. The account on the other side, and in favor of the testator, was composed of bonds, and the notes, and the accumulating interest. There can be no doubt that the relations thus existing established a mutual account: Accounts are mutual where each party makes charges against the other. (*Tucker* v. *Ives*, 6 Cow., 193; *Kimball* v. *Brown*, 7 Wend., 322; *Chamberlin* v. *Cuyler*, 9 id., 127; *Edmondstone* v. *Thomson*, 15 id., 554; *Catling* v. *Skoulding*, 6 T. R., 189; *Sickles* v. *Mather*, 20 Wend., 72.) When there is a mutual open current account and reciprocal demands, the cause of action shall be deemed to have accrued from the time of the last item proved in the account on either side. (Code, § 95.) Secondly. Although the statute of limitations has applied the debt may be revived. (Code, § 110.) The revival must be by acknowledgment or promise in writing, signed by the party. It must be an unqualified admission of the debt, and indicate an intention or willingness to pay it, or justify the presumption of such intention or be of such form that a promise to pay may be implied from it. (*Turner* v. *Martin*, 4 Robt., 661; *Loomis* v. *Decker*, 1 Daly, 186; *Com. Mut. Ins. Co.* v. *Brett*, 44 Barb., 489; *McNamee* v. *Tenny*, 41 id., 506; *Bloodgood* v. *Bruen*, 4

Seld., 368; *Frost* v. *Bengough*, 1 Bing., 266; *Mosher* v. *Hubbard*, 13 Johns., 510; *Winchell* v. *Hicks*, 18 N. Y., 560.) In the inventory made by the appellant, as one of the executors of the testator, and verified in the usual form, these notes were set out as assets of the testator. This was held by the referee to be a written and signed acknowledgment of the existence of the notes from which a willingness or promise to pay them could be implied. This conclusion was clearly correct. It seems to be impossible, reasonably, to draw any other inference from the statement of them as assets, when the appellant had it in his power to characterize them as outlawed and valueless. He could have, at least, assumed that attitude, but there is no evidence that he did so. He made no request or demand to have it done by his co-executor. There is evidence also tending to show a recognition of the validity of the notes, by accepting them as a part of the sum of $15,000 to which he was entitled from the estate of the testator. The question or issue thus presented is in conflict, perhaps, on the evidence, but the referee has given the estate the benefit of that circumstance. It is not necessary, however, to invoke it. The statement of the notes as assets is in itself sufficient to take them out of the statute. The insertion by an insolvent debtor in the inventory of his debts, of one otherwise discharged by the statute, is a sufficient acknowledgment to revive the obligation to pay. (*Bryar* v. *Willcocks*, 3 Cow., 159; *Stuart* v. *Foster*, 18 Abb. Pr., 305.) In the latter case it was said, per James, J.: "The Code does not define what the writing shall be; it merely requires the acknowledgment or promise to be contained in some writing, signed by the party charged, and, for aught I can see, it can as effectually be made in a general assignment for the benefit of creditors as in any other instrument." The result of these considerations is that the notes were not barred by the statute of limitations.

The next question presented on behalf of the appellants is, the exclusion of the receipt of May 7, 1873, signed by the testator, acknowledging the receipt of the balance of one dollar from the appellant, in full of interest on his bonds, notes and other instruments of indebtedness. This paper was obtained on a morning succeeding a night during which the appellant had watched or attended his father. It was signed in the bedroom of the testator.

The latter, who was upward of eighty-three years old, had been ill for some time previous to the signing, having periods of great anguish from physical suffering, ending in *coma*.   As said by the counsel for the respondent: "He was dying from suffocation.   His nights were sleepless.   In the day he passed from periods of physical anguish when he was gasping for breath to periods of stupor, in which alone he found relief."   It is true that when he was relieved from pain or roused from his stupor his mind was clear, and he was capable of understanding, and apparently appreciating, what was said to or required of him.   He was, nevertheless, a sick and suffering man, and subject, necessarily, to influences founded upon close relations, either of love, affection, or business.   The appellant occupied toward him three distinct relations.   He was his agent, attorney, and son.   On the morning when the receipt was signed, and when the appellant was with him after a night of watchfulness, he was heard to ask : What do you want me to do ? or, What shall I do ?   Mrs. Westerfield, his daughter, and the subscribing witness to the receipt, was then called, and the paper signed.   The body of the receipt was in the appellant's handwriting.   There was evidence to show that the ink used in writing the date and signature, was different in color from that employed in writing the rest of the paper, but this circumstance is not material.

  The question asked by the testator indicated importunity : What do you want me to do ? or, What shall I do ?   There is no evidence of any previous meeting in which any such transaction as this was foreshadowed.   The evidence, indeed, warrants the conclusion, that prior to the day on which the receipt was signed and within a few days of it, the interest was regarded by the testator as a charge against the appellant.   The receipt having been obtained under the circumstances stated, and, in view of the relations existing between the testator and the appellant, it was presumptively fraudulent and void.   It was not necessary, therefore, on the part of the estate to show a want of consideration, mental infirmity, or incapacity in the first instance.   A court of equity interposes its benign jurisdiction to set aside instruments executed between persons standing in relations of parent and child, guardian and ward, physician and patient, solicitor and client, and in various other relations in which one party is so situate as to exercise a controll-

ing influence over the will and conduct and interests of another; and this power will be exercised unless the instrument is satisfactorily shown to be fair and free from improper influence by the party seeking its benefit, the burden of which rest upon him. (*Mason* v. *Ring*, 2 Abb. Pr. [N. S.], 322; *Sears* v. *Shafer*, 6 N. Y., 268; *Comstock* v. *Comstock*, 57 Barb., 453; *Evans* v. *Ellis*, 5 Den., 640; *Howell* v. *Ransom*, 11 Paige, 530; *Brock* v. *Barnes, Exr.*, 40 Barb., 521; Story's Eq. Jur., §§ 309 to 315.) The appellant has failed to overcome the presumption against the validity of the receipt, and the case presents a valuable illustration of the soundness and integrity of the rule by which that paper is disarmed of effect. The chief questions raised in favor of the appellant are thus decided against him. The exceptions taken on his behalf during the accounting are of no value. If any of them were, it is quite apparent, in the view taken of his appeal, that they refer to subjects which could not at all, with one exception, prejudice his case. The exception referred to relates to questions excluded upon the ground that they were designed to reveal transactions or communications had with the deceased, and they were properly excluded. We are constantly impressed with the ingenuity displayed in efforts to overcome the salutory operation of section 399 of the Code, which excludes claimants from declaring their transactions and communications with deceased persons, and are gratified to find that the courts are alert to frustrate them. Various theories, specious and plausible, are presented, but they are met by a simple interpretation of the statute which overcomes them all.

The result of these considerations is, that the appellant takes nothing by his appeal. There are, however, other questions for examination. Mrs. Uglow, a residuary legatee, is charged by the executors' account with the sum of $934.26, being the amount of the two bills paid by the executors and debited to her. She took no appeal from the decree, but claims that under rule 51 of this court she can ask a modification thereof, and upon the ground that it is erroneous as against her and in favor of the appellant and all other parties in interest. The petition of appeal by Peter B. Ross, who is the appellant, presents no question relative to Mrs. Uglow's account, and the decree against her is not in his favor as contemplated by the fifty-first rule under which she claims a modi-

fication of the decree. When, according to that rule, the appellant wishes to review the decision as to the allowance or rejection of any particular item of the account, such item shall be specified in the petition of appeal, and the respondent then, in his answer to the petition, may also specify any items of the account as to which he supposes the sentence or decree is erroneous as against him and in favor of the appellant. And upon the hearing of the parties upon such appeal, the sentence or decree may be modified as to any such items in the same manner as if a cross-appeal had been brought by such respondent. This rule is similar to one adopted by the late Court of Chancery (rule 118), and the interpretation of that rule by that court was to the effect that if the respondent wished to raise questions between himself and other respondents he must appeal. (See *Collins* v. *Hoxie*, 9 Paige, 81–87.) Such seems to be the import of rule 51. If the executors were appellants, for example, and the respondents presented a claim against the estate which was rejected, or demanded an allowance which was refused, and which therefore involved a sentence against her and in favor of the appellants, it could be set up by answer and should be considered as a part of the appeal. The rule seems to furnish the opportunity of setting off claims by review and, is therefore rather a means of defense than assault. This effect does not infringe upon the statute in relation to appeals from surrogate's decrees. The statute declares that the Supreme Court shall prescribe, by rule, the course of practice on such appeals (2 R. S., 611, § 120), and it has declared the course by rule 51. It was proper, as contemplated, that between the appellant and respondent, as far as the decree affected each other's claims or reciprocal demands directly, the one against the other, that the case should be heard as two appeals, the one against the other, but it was not designed to interfere between the statute and respondents, as between each other, and settle their differences presented thus collaterally. If the converse of this proposition be adopted, then all of the respondents become appellants, each as to the other, and none of them would comply with the statute regulating appeals and requiring security to be given when taken. (2 R. S., 610, § 108.) It may be supposed that the decisions of the Court of Appeals declaring that in most, if not all, cases of appeals from the decision of the surrogates, the whole case is to be examined

by that court, as well upon the facts as the law, are in conflict with this view; but these cases in this respect only distinguish such appeals from ordinary cases, in which that court would not review questions of fact. (*Robinson* v. *Raynor*, 28 N. Y., 494; *Schenck* v. *Dart*, 22 id., 420; *Canjolle* v. *Ferrie*, 23 id., 90.) And this is because the appeal is in the nature of an equitable review. (*Clapp* v. *Fullerton*, 34 N. Y., 195, 196.) The exercise of this power and duty is limited to the questions presented by the appeal, and is so declared; and these questions are again controlled by the practice which the Supreme Court has adopted. Whatever is reviewed in the court below is considered there. The respondent, except for the purpose of showing that the Supreme Court erred in refusing to determine them, could not present to the Court of Appeals and require them to hear any questions which she brought to the consideration of the Supreme Court, not as appellant but as respondent, under the fifty-first rule. If, in other words, the respondent's case was not within the rule allowing her to answer the petition of appeal, and to present the questions arising upon it, she would not be heard in the Court of Appeals; there would be no question presented by the appeal on her behalf. It may be said in addition that, if the case were open to review, there is little doubt that the decision of the referee in regard to Mrs. Uglow's claim could be sustained. The respondents, John H. and Edward M. Ross, also seek, under the fifty-first rule, to assail the claim of the appellant herein, Peter B. Ross, for services as agent and attorney, which was allowed to him. They are not in the position to do this, being respondents, and not having appealed.

The same reasoning applies to them as to Mrs. Uglow. There is no decision against them in favor of the appellant. The allowance of the appellant's claim affects them individually, each for an aliquot part; but the decision or sentence is against the whole estate, and not against them or either of them individually. Aside from this conclusion, however, it may be said that the claim of Peter B. Ross, the appellant, though not one which commends itself to the consideration of the court, has, nevertheless, legal vitality. The executors do not seem to question it, and the evidence given in relation to it is sufficient to warrant the conclusion that it was just. There is no evidence tending to show that there

was no occasion for the services, or that they were not in fact rendered. They were accepted as constituting claims running together with demands against him, and establishing the existence of mutual accounts, which operated favorably to the estate, and prevented the application of the statute of limitations to demands against him in its favor. There is no good reason why the allowance to the appellant should be disturbed. A son may have. a valid claim against his father and may, from their relations, be unable to make satisfactory proof of it after the death of the latter, unless the restriction created by section 399 of the Code be waived, on the trial, in a liberal spirit, for the promotion of justice. Whether such a claim should ever be urged except in cases of great emergency, based upon necessity, is a matter about which there might be a difference of opinion; but in legal contemplation the laborer is worthy of his hire, even though he be a son seeking compensation from his father, provided he has arrived at manhood and is no longer, therefore, subject to his control. The respondents, John H. and Edward M. Ross, for these reasons, accomplish nothing with respect to the appellant's claim, admitted by the surrogate. The same result must follow their attempt to disturb the allowances made to the various counsel. The appeal, in this respect, is predicated of the proposition that the surrogate has no power to make them; but the respondents are mistaken; since the adjudications cited on the subject were made, the legislature has provided that the surrogate of this county may grant allowances in lieu of costs, to counsel, in any proceedings before him, in the same manner as is now prescribed by the Code of Procedure in civil actions. (Laws of 1870, vol. 1, chap. 359, § 9, p. 828.) The allowance seems to be excessive, but the estate was large, amounting to $200,000 and upward, and the litigation about the accounts protracted and not free from difficulty. No appeal has been taken from this part of the decree.

The respondents, John H. Ross and Edward M. Ross, assume the right to attack the allowances, under the provisions of rule 51, but they cannot successfully do so. If we were satisfied, on the case as presented, that a deduction should be made, we should not hesitate to aver it, *ex debito justitiæ*, under the suggestion made in *Devin* v. *Patchin* (26 N. Y., 448). In accordance with the views thus

expressed of the questions considered on this appeal, it becomes our duty to affirm the surrogate's decree. It is ordered accordingly, with costs to the respondents, the executors, only.

DAVIS, P. J., and DANIELS, J., concurred.

Decree affirmed, with costs to the executors.